1997 SD 21

**Keith MEYER, Plaintiff and Appellant,**

and

**Meyer Dakota Freightways, Inc., Plaintiff,**

v.

**Leonard SANTEMA, Darwin Willmott, and the City of White, South Dakota, Defendants and Appellees.**

**No. 19694.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 16, 1997.

Decided Feb. 26, 1997.

. . . .

Charles L. Dorothy, Sioux Falls, for plaintiff and appellant.

Robert G. Fite of Fite and Pierce, Brookings, for defendants and appellees Santema and Willmott.

Sandra Hoglund and Edwin Evans of Davenport, Evans, Hurwitz and Smith, Sioux

Falls, for defendant and appellee City of White.

SABERS, Justice.

[¶ 1] Purchaser sued sellers and the City of White in connection with statements that certain land was zoned for industrial use. Claiming that he relied on those statements, he brought an action for "negligent misrepresentation" because he was not able to develop the land· for industrial use. Summary judgment was granted to all defendants. We affirm.

## FACTS

[¶ 2] In July of 1994, Keith Meyer (Meyer) approached Darwin Willmott (Willmott) and Leonard Santema (Santema) to buy two lots which they owned in White, South Dakota. Meyer wished to build and operate a trucking terminal on the lots. Willmott and Santema told him the lots were zoned industrial and that a trucking operation could be located there. Meyer gave them $500 earnest money and signed a purchase agreement for the land (lots 3 and 4).

[¶ 3] Meyer attempted to obtain a building permit but was informed that he needed to appear before the White City Council. He attended the August 1, 1994 meeting and described his plans for the lots. There was some debate whether the lots were zoned industrial or R–2 for residential use. Willmott was a member of the City Council and assured the other members that the lots were zoned industrial. The mayor stated, "If they are not industrial, we will make them industrial." The Council voted to zone the lots industrial and told Meyer to proceed with his building plans. City promised to install water and sewer lines to the edge of the lot, which it did on August 19.

[¶ 4] On August 16, Meyer paid Willmott and Santema the balance due under the purchase agreement and began to prepare the site for the trucking terminal.[1] He was advised a building permit would be forthcoming as soon as he supplied the dimensions of the proposed building.

[¶ 5] On September 12, a citizen appeared before the City Council to protest the rezoning of lots 3 and 4. He bought land earlier in 1994 from Willmott and Santema in a proposed residential area west of those lots, and claimed Willmott and Santema assured him that lots 3 and 4 were zoned residential. He challenged the method by which City rezoned the lots as contrary to statute, and threatened to sue if City did not rescind the August 1 resolution. The resolution was defective because no notice was given and no hearing held. City rescinded the resolution and passed an identical resolution. Notice was published in accordance with SDCL chapter 9–19.[2] At a hearing held on October 3, 1994, a number of citizens spoke in opposition to the rezoning of lots 3 and 4. After going into executive session, City voted to deny the rezoning of the lots to industrial.

[¶ 6] Meyer purchased two adjacent lots (lots 1 and 2) which were zoned industrial and moved the mobile home and equipment to those lots. Although he obtained a permit to build the trucking terminal on that property, he has not done so. Willmott and Santema offered to buy back lots 3 and 4 but Meyer rejected the offer, apparently because they refused to compensate him for his expenses in preparing the lots for construction.[3]

---

1. Preparations included moving a mobile home onto the site as a temporary office, tearing the roof from an existing building, and removing old foundations, trees, and debris. Meyer also made arrangements for lumber and materials to be moved to the site.

2. Chapter 9–19 provides the procedure for passage of ordinances and resolutions and includes mandatory publication requirements. See SDCL 9–19–8 and –13.

3. Meyer also alleges that City "set out on a course of conduct to force Meyer from lots 1 and 2, as well as 3 and 4." Meyer disputed whether

City had a basis in its ordinance for forcing him to obtain a variance to place the mobile home office on lots 1 and 2, a variance upon which City has yet to rule. He sought a declaratory judgment to determine the validity of City's 1977 zoning ordinance; the trial court ruled the ordinance was invalid because City did not properly adopt a comprehensive plan. City then adopted the 1977 ordinance as an emergency temporary zoning ordinance until a comprehensive plan and a new zoning ordinance could be passed.

Although obviously frustrating to Meyer, the validity of City's zoning ordinance was the subject of the declaratory judgment action, which is

[¶ 7] Meyer brought suit against Willmott, Santema, and City, claiming that the defendants' statements that lots 3 and 4 were zoned for industrial use constituted "negligent misrepresentation." Meyer appeals from summary judgment motions granted all defendants.

## STANDARD OF REVIEW

[¶ 8] Our standard of review for summary judgment is well-established:

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Lamp v. First Nat'l Bank of Garretson,* 496 N.W.2d 581, 583 (S.D.1993) (citation omitted). "The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." *State Dep't of Revenue v. Thiewes,* 448 N.W.2d 1, 2 (S.D. 1989) (citation omitted). There are no genuine issues of material fact present in this case; therefore, summary judgment will be affirmed only if the trial court has correctly decided the legal issues before it. *Farmland Ins. Cos. v. Heitmann,* 498 N.W.2d 620, 622 (S.D.1993) (citing *Stroh v. Town of Java,* 463 N.W.2d 923 (S.D.1990); *Bego v. Gordon,* 407 N.W.2d 801 (S.D.1987); *Trapp v. Madera Pacific, Inc.,* 390 N.W.2d 558 (S.D.1986)).

not before us in this appeal, and provides no additional grounds for a claim of negligent mis-

## NEGLIGENT MISREPRESENTATION

[¶ 9] Meyer claims the defendants negligently misrepresented the zoning status of lots 3 and 4.

The tort of negligent misrepresentation occurs when in the course of a business or any other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in their business transactions, without exercising reasonable care in obtaining or communicating the information.

*Pickering v. Pickering,* 434 N.W.2d 758, 762 (S.D.1989) (emphasis omitted) (citing Restatement (Second) of Torts § 552 (1977)). A party seeking relief for the tort of negligent misrepresentation must prove:

> [K]nowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will ... be injured in person or property. Finally, the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information and the other giving the information owes a duty to give it with care.

*Rumpza v. Larsen,* 1996 SD 87, ¶ 19, 551 N.W.2d 810, 814 (citing *Swanson v. Sioux Valley Empire Elec. Ass'n,* 535 N.W.2d 755, 757 (S.D.1995)) (quoting *Aesoph v. Kusser,* 498 N.W.2d 654, 656 (S.D.1993)).

[¶ 10] Sellers' misrepresentation of fact might be actionable had Meyer relied on that statement to his detriment. However, by Meyer's own admission, Willmott and Santema are not to blame for Meyer's closing of the land sale:

> [Meyer] would not have closed the sale (i.e. paid the remaining money owed on the lots) had the City Council of White not told him the lots were zoned industrial and that a trucking terminal could be built on them.

Appellant's Brief at 17. Therefore, it was Meyer's reliance on City's, not sellers', representations that led to his claimed pecuniary

representation.

loss. *Cf. Mark Twain Kansas City Bank v. Jackson,* 912 S.W.2d 536, 540 (Mo.Ct.App. 1995) (stating that plaintiff must establish its justifiable reliance on the misrepresentation).

[¶ 11] When City told Meyer it would rezone the lots to industrial, the statement indicated a future event or occurrence.[4] Generally, representations as to future events are not actionable and false representations must be of past or existing facts. *Mobridge Community Indus., Inc. v. Toure, Ltd.,* 273 N.W.2d 128, 133 (S.D.1978) (citing *Aschoff v. Mobil Oil Corp.,* 261 N.W.2d 120 (S.D.1977)).[5]

[¶ 12] Additionally, Meyer is presumed to know the law, including the nature and extent of City's authority. *State v. Dorhout,* 513 N.W.2d 390, 395 (S.D.1994) (citing *Hanson v. Brookings Hosp.,* 469 N.W.2d 826, 828 (S.D.1991) ("The law includes municipal ordinances.")); *see also Northernaire Productions, Inc. v. County of Crow Wing,* 309 Minn. 386, 244 N.W.2d 279, 282 (1976) ("The plaintiffs here had alternative means of obtaining an interpretation of the zoning ordinance, either by consulting an attorney or by applying to the full [Commission] for a formal interpretation pursuant to established procedures."). Therefore, Meyer was charged with the knowledge that an ordinance may only be changed through compliance with proper statutory procedures.

[¶ 13] Furthermore, City's misrepresentations concerned interpretation and implementation of a zoning ordinance, which is a matter of law—misrepresentations of law are not actionable. *Gatz,* 356 N.W.2d at 718 (citing *Northernaire,* 244 N.W.2d at 281, where the Minnesota Supreme Court held that county officials may not be held liable in damages when they negligently misrepresent the legal requirements of their zoning ordinance to members of the public who rely on that misrepresentation); *see also Smith v. Sears, Roebuck & Co.,* 672 So.2d 794, 797 (Ala.Civ.App.), *reh'g & cert. denied* (1995) (stating that misrepresentations of law do not support an action for fraud).

[¶ 14] The trial court correctly concluded that summary judgment was proper for all defendants and we affirm.

[¶ 15] MILLER, C.J., and AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

---

4. SDCL 9–19–13 prevents a zoning change from becoming effective simply upon a vote by the City Council by providing that resolutions and ordinances enacted by a municipal government become effective only upon the twentieth day after publication unless suspended by operation of a referendum; *see also* SDCL 11–4–10 (granting right to referendum and right to protest changes in zoning ordinances); *In re Jackpine Gypsies Motorcycle Club, Inc.,* 395 N.W.2d 593, 595 (S.D. 1986) ("Statutes authorize such formal procedures for the purpose of assuring timely notice to the electors of the administrative decisions and determinations of the governing body and provide a full and fair opportunity to refer its decisions to the voters for approval or rejection.") (citing *Roush v. Town of Esmond,* 73 S.D. 406, 43 N.W.2d 547 (1950)).

5. This standard, though generally recited in fraudulent misrepresentation cases, is equally applicable in a negligent misrepresentation case. "A party cannot justifiably rely upon conjecture about future events." *Gatz v. Frank M. Langenfeld & Sons Constr. Inc.,* 356 N.W.2d 716, 718 (Minn.Ct.App.1984).