1999 SD 143

**Jennifer HARMS, Plaintiff and Appellee,**

v.

**NORTHLAND FORD DEALERS, Defendant and Appellant,**

and

**Moccasin Creek Country Club, Defendant and Appellee.**

No. 20540.

Supreme Court of South Dakota.

Argued March 23, 1999.

Decided Nov. 10, 1999.

**59**

Thomas M. Tobin, Aberdeen, for plaintiff and appellee.

Jeremiah Gallivan of Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for defendant and appellant.

Daniel R. Fritz of Fritz, Hogan & Johnson, Aberdeen, for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] As a promotion during a golf tournament at Moccasin Creek Country Club, Northland Ford Dealers offered a new Ford Explorer to the first golfer to hit a hole-in-one at the eighth hole. Jennifer Harms scored a hole-in-one with a shot from the amateur women's tee box. Yet she was denied the prize. To be eligible to win, Northland revealed, all amateurs, male and female, had to tee off from the amateur men's tee box. This requirement was not made known to the players beforehand. Northland and Moccasin Creek blamed each other for the mix-up. When she sued, the circuit court granted Harms summary judgment against both Northland and Moccasin Creek. We affirm that decision. As the contest sponsor, Northland breached its contract to award the prize in accord with the announced rules. The court also granted summary judgment to Moccasin Creek on its cross-claim against Northland. We reverse that ruling because genuine issues of material fact remain on whether Moccasin Creek breached its agreement with Northland in setting up the hole-in-one contest to Northland's specifications.

**Facts**

[¶ 2.] The Dakota Tour is a series of four golf tournaments played each summer in South Dakota. Participation is open to both men and women, professional and amateur. Moccasin Creek Country Club in Aberdeen is one of the Tour hosts. In 1995, Northland Ford Dealers, an association of dealerships, offered to sponsor a "hole-in-one" contest at Moccasin Creek during the Tour. To the first golfer to "ace" a specified contest hole, Northland would award a new Ford Explorer. Moccasin Creek agreed to include the contest

as part of its tournament. Northland paid a $4,602 premium to Continental Hole–in–One, Inc. to insure the award of the contest prize. The insurance application stated in capital letters: "ALL AMATEUR MEN & WOMEN WILL UTILIZE THE SAME TEE."

[¶ 3.] A day before the Tour reached Moccasin Creek, its head golf pro, Ted Zahn, received a telephone call from Continental. Zahn told the caller that he was concerned about the lack of information and planning surrounding the hole-in-one contest. Continental's representative replied that there was no reason for concern because "[Continental] ran the deal." Continental faxed Zahn instructions for the minimum yardage distances for the contest hole. The distances varied for each day, but for the third day, the one under inquiry here, the fax message stated: "Pros—Minimum of 193 Yards; Ams—Minimum of 170 Yards." The instructions warned: "It is imperative that these yardages are correct each day to keep [Northland's] hole-in-one coverage valid." Zahn turned Continental's instructions over to his staff "to set up the hole according to the fax. . . ." Nothing in Continental's instructions suggested that any different yardages were to be used for the women contestants. But as Moccasin Creek's course superintendent later reflected, "I assumed it was a men's prize and was not informed either way, that women were also competing with it. . . ."

[¶ 4.] Continental asked Moccasin Creek to find someone to sit at the green and act as a "spotter" to verify claims of a hole-in-one. Continental paid the spotter $50 per day. The local Ford dealership hired another spotter for the same purpose. Continental supplied a banner and Moccasin Creek posted it on the course to advertise the contest. It announced that a hole-in-one would win the car, but it gave no other details. The local Ford dealership parked a Ford Explorer near the banner.

[¶ 5.] No explanation of the hole-in-one contest was given to the registered golfers in the tournament information sheet. The sheet did, however, stipulate that "USGA Rules govern all play except where modified by the Local Rules. . . ." For this tournament, the rules directed: "Professionals will play from the blue tees. Male amateurs will play from the yellow tees, female amateurs will play from the red tees." Amateur female participants were not told that to qualify for the hole-in-one contest, they would have to tee off from the amateur men's tee box. With no gender distinction announced for the hole-in-one contest, female contestants could infer that the rules for teeing applied to the eighth hole the same as every other.

[¶ 6.] On the last day of the tournament, Jennifer Harms, an amateur golfer, "aced" the contest hole, shooting from the red, amateur women's tee. After the distance between the red tee box and the hole was measured, however, it was decided that the required minimum distance had not been met. When Harms returned to the clubhouse on completing her round, she learned from her parents that her shot was pending disqualification. Northland later refused to award her the new vehicle.

[¶ 7.] Harms was a collegiate golfer at Concordia College in Moorhead, Minnesota. She returned to Concordia that fall to complete her last year of athletic eligibility. Then, in June 1996, she sued Northland and Moccasin Creek for breach of contract. Both defendants cross-claimed against the other. The circuit court granted summary judgment to Harms against Northland and Moccasin Creek, and also granted summary judgment to Moccasin Creek on its cross-claim against Northland. The court awarded Harms $25,125, with interest and costs. Northland appeals, contending that unresolved legal questions and genuine issues of material fact exist on Harms' breach of contract claim and Moccasin Creek's cross-claim. Moccasin Creek does not request our review of Harms' summary judgment against it; instead, it seeks only to uphold its cross-claim against Northland.

## Standard of Review

[¶ 8.] "Under our familiar standard for reviewing summary judgments, we decide only whether genuine issues of material fact existed and whether the law was correctly applied." *Kobbeman v. Oleson,* 1998 SD 20, ¶ 4, 574 N.W.2d 633, 635. We view the evidence in a light most favorable to the nonmovant and resolve reasonable doubts against the movant. *Calvello v. Yankton Sioux Tribe,* 1998 SD 107, ¶ 8, 584 N.W.2d 108, 111. The burden of proof rests on the movant to show clearly the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *State Dep't of Revenue v. Thiewes,* 448 N.W.2d 1, 2 (S.D.1989). If no genuine issue of fact remains, and if the trial court correctly decided the legal issues, then summary judgment will be affirmed. *Alverson v. Northwestern Nat'l Cas. Co.,* 1997 SD 9, ¶ 4, 559 N.W.2d 234, 235; *Meyer v. Santema,* 1997 SD 21, ¶ 8, 559 N.W.2d 251, 254. We will affirm the trial court's decision if any legal basis exists to support it. *De Smet Ins. Co. of South Dakota v. Gibson,* 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99; SDCL 15–6–56(c). Contract interpretation is a question of law reviewed de novo. *State Farm Mut. Auto. Ins. Co. v. Vostad,* 520 N.W.2d 273, 275 (S.D.1994). Existence of a legal duty is also a question of law. *Poelstra v. Basin Elec. Power Coop.,* 1996 SD 36, ¶ 9, 545 N.W.2d 823, 825.

### A.

[¶ 9.] Northland first asserts that Harms failed to meet her burden of showing the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Harms filed only a bare motion, with no supporting documents. Northland contends that without affidavits and an accompanying legal brief, Harms' summary judgment motion was unsupported.

[¶ 10.] Under SDCL 15–6–56(c), the circuit court in the first instance, and we on appeal, may consider everything in the record, including depositions, discovery responses, affidavits, and any other material properly admitted. *Ward v. Lange,* 1996 SD 113, ¶ 10, 553 N.W.2d 246, 249. In the circuit court file are answers to interrogatories, exhibits, and several depositions. The golf professionals at Moccasin Creek were deposed, along with Harms and her father. Most often, summary judgment motions include affidavits, and it is surely better practice to submit a supporting brief, but there is no requirement that this be done. SDCL 15–6–56(a). The record contained ample information to consider the motion for summary judgment.

### B.

[¶ 11.] No one can seriously dispute that, based on the promulgated contest rules, Harms earned the prize when she sank her winning shot. She registered for the tournament and paid her $160 entrance fee. During play at the contest hole, she teed off from the amateur women's red marker, as she had done on all the other holes that day and the two previous days of the tournament. Concededly, she hit from a point under the minimum distance dictated by Northland's insurer, but she was following the tournament rule that required amateur women to tee from the red markers, not the yellow or the blue, as with the amateur men and the professionals. None of the participants knew of the minimum yardage requirement. Yet only amateur women stood ineligible to win the car if they followed the tournament rules.

[¶ 12.] We ascribe to contract terms "their plain and ordinary meaning." *Economic Aero Club, Inc. v. Avemco Ins. Co.,* 540 N.W.2d 644, 645 (S.D.1995). Northland must abide by the rules it announced, not by the ones it left unannounced. This was a vintage unilateral contract with performance by the offeree as acceptance. E. Allan Farnsworth, Contracts § 3.4 (2d ed 1990). Accepting a sponsor's offer to participate in a contest creates an enforceable contract; awarding a prize to a contest winner is a contractual duty. *See Robert-*

*son v. United States,* 343 U.S. 711, 713–14, 72 S.Ct. 994, 996, 96 L.Ed. 1237, 1240 (1952). The circuit court rightly concluded that there were no issues of material fact on the breach of contract claim against Northland. What facts may support Harms' summary judgment against Moccasin Creek we need not consider, as it sought no review of that ruling.

[¶ 13.] Two similar cases from other jurisdictions support our decision. In *Las Vegas Hacienda, Inc., v. Gibson,* 77 Nev. 25, 359 P.2d 85 (1961), a golf course offered to pay $5,000 to any person scoring a hole-in-one. *Id.* at 86. Gibson paid fifty cents for the chance and succeeded. The golf course refused to award the prize. Concluding that a valid contract existed between the golf course and Gibson, the court ruled that he had accepted the terms of the course's offer by paying the entry fee. His consideration was shooting the hole-in-one. *Id.* at 86.

[¶ 14.] In *Grove v. Charbonneau Buick–Pontiac, Inc.,* 240 N.W.2d 853 (N.D.1976), the court ruled for the golfer in an action to recover the prize in a hole-in-one contest. The contest offered a new car to the first participant who "shoots a hole-in-one on Hole No. 8." *Id.* at 855. Every golfer was to play eighteen holes. The course, however, only had nine. To make eighteen holes, participants played the course twice. For the first nine, they used the blue tees; for the second, the red tees. The blue tees were marked one through nine (which matched the hole numbers); the red tees were marked ten through eighteen. Grove shot his hole-in-one while playing from the seventeenth tee and shooting at the green marked number eight. When the car dealership refused to award Grove the car because he did not make the ace on the eighth hole, he brought suit.

[¶ 15.] The North Dakota Supreme Court found that an enforceable contract existed between Grove and the dealership, though with ambiguous terms. *Id.* at 861–62. The court resolved the ambiguities in the contestant's favor. *Id.* at 862. "We are not suggesting," the court wrote, "that [the dealership] intended to trifle with the public, but if we do not apply the rule of law on ambiguous contracts ... to this situation we would permit promoters to trifle with the public, which we do not believe the law should permit, and in fact, does not permit." *Id.* Similarly, Northland's banner declared that a hole-in-one would win the car. Whatever ambiguity that announcement contained should not be resolved against a contestant.

## C.

[¶ 16.] Northland contends that Harms renounced the prize by returning to college to compete in the National Collegiate Athletic Association (NCAA). Under NCAA rules, accepting this prize, or agreeing to accept it at some later time, would have disqualified Harms from her final year of eligibility. After learning she could not accept the car, Northland insists, continuing her NCAA competition evinced unambiguous intent to waive acceptance and she should now be estopped from proceeding with it. At least, Northland asserts, there are genuine questions of fact on this issue.

[¶ 17.] Waiver is a volitional relinquishment, by act or word, of a known, existing right conferred in law or contract. *Wieczorek v. Farmers' Mut. Hail Ins. Ass'n of Iowa,* 61 S.D. 211, 216–17, 247 N.W. 895, 897 (1933). Or, more pointedly, waiver is "the excuse of the nonoccurrence ... of a duty." Farnsworth, *supra,* § 8.5. Estoppel applies to those who by their words or conduct take positions inconsistent with their rights, unfairly misleading others into detrimental reliance. *Western Cas. and Sur. Co. v. American Nat'l Fire Ins. Co.,* 318 N.W.2d 126, 128 (S.D.1982) (citing *Somers v. Somers,* 27 S.D. 500, 504, 131 N.W. 1091, 1093 (1911)).

[¶ 18.] Harms could not disclaim the prize; it was not hers to refuse. She was told her shot from the wrong tee disqualified

her. One can hardly relinquish what was never conferred. Northland repudiated any duty to perform under its contract. Likewise, to suggest that she should be estopped from claiming the car because she returned to compete in collegiate sports is argument by diversion. For our analysis, Harms' NCAA eligibility is irrelevant. Even if she had foregone collegiate golf in hope of receiving the prize, Northland still maintained that she scored from the wrong tee. By its reckoning, whether she played college golf or not, she would never have the car. Under the elements of estoppel, then, how was Northland detrimentally misled by Harms' decision to play her last year? We find no waiver and no estoppel, and, thus, Harms cannot be denied the prize.

### D.

[¶ 19.] The circuit court granted summary judgment to Moccasin Creek on its cross-claim against Northland. Although it contends it had no contract with anyone, Moccasin Creek agreed with Northland to include its promotional contest as part of the larger tournament. All the required elements of a valid contract are present here. *See* SDCL 53–1–2. A substantial prize offered for a hole-in-one assuredly enhances a tournament's attraction and presumably increases registration. Good consideration for a contract may take the form of "[a]ny benefit conferred or agreed to be conferred upon the promiser by any other person. . . ." SDCL 53–6–1. Moreover, contractual consideration may "move" to the benefit of someone other than the one making or receiving a promise. Farnsworth, *supra*, § 2.3. *See, e.g., Thompson Yards v. Van Nice*, 59 S.D. 306, 239 N.W. 753 (1931); *Evans & Howard Fire Brick Co. v. National Sur. Co.*, 42 S.D. 109, 173 N.W. 448 (1919). Undoubtedly, the added beneficiaries to Moccasin Creek's agreement were its tournament registrants.

[¶ 20.] Moccasin Creek received instructions on the minimum distances for the contest and agreed to set up the tee grounds for the eighth hole to conform to those instructions. Thus it took part responsibility for the contest. The course superintendent testified in his deposition that the eighth hole was set up to the specifications set by Northland's insurer. Yet he made assumptions not intrinsic to those instructions:

> [M]en are required to have tee placements between a hundred and seventy and a hundred and eighty yards. . . . We know that women are required somewhere in the hundred and thirty-five to hundred and fifty yard range. So obviously based on past experience, I assumed that it was a men's prize and was not informed either way, that women were also competing with it and it never occurred to me that there was a possible inequity that would happen if a lady got a hole-in-one.

The superintendent concluded that it would be "grossly unfair" to require women to tee off from the men's teeing ground because they "would have a very, very low chance of making a hole-in-one from those kind of yardages." So he assumed that there was "no provision for women" and "set the women's tee where it is fair to play from; that is, their tee box." Amateur women were thus tacitly declared ineligible, not by Northland, and not by its insurer, but by a false assumption.

[¶ 21.] Moccasin Creek argues that Continental did not provide complete and accurate information on the contest. The only specifics given were the daily yardage distances for amateurs and professionals. Only Northland and Continental knew for certain that amateur women were as eligible as amateur men so long as they all shot from the same tee. Nonetheless, without seeking any clarification, Moccasin Creek undertook to set up the hole-in-one contest. Whether it breached that undertaking is a jury question. Because genuine issues of material fact remain on the cross-claims between Northland and Moccasin Creek, summary judgment for Moccasin

Creek is reversed, and the matter is remanded for trial.

[¶ 22.] Affirmed in part, reversed in part, and remanded.

[¶ 23.] MILLER, Chief Justice and SABERS, Justice, concur.

[¶ 24.] AMUNDSON and GILBERTSON, Justices, concur in part and dissent in part.

AMUNDSON, Justice (concurring in part and dissenting in part).

[¶ 25.] I concur on Issue 1 and join Justice Gilbertson's dissent on Issue 2.

GILBERTSON, Justice (concurring in part and dissenting in part).

[¶ 26.] I concur with the majority opinion that summary judgment should be affirmed in favor of Harms. However, I respectfully dissent as to the reversal of summary judgment in favor of Moccasin Creek.

[¶ 27.] An essential element of any purported contract between Moccasin Creek and Northland Ford Dealers is consideration. SDCL 53–6–1. Moccasin Creek argues there was none flowing to it from Northland. When one searches the brief of Northland for authority to the contrary, only the following can be located:

> With this backdrop, the facts establish that in February of 1995, Moccasin Creek received and accepted Northland Ford's offer to sponsor a hole-in-one contest as part of their Dakota Tour tournament. *Consciously or subconsciously, it did so because the size, number and quality of the prizes offered enhanced the prestige of the tournament.* (emphasis added).

If this is a factual recitation based on the record in this case, it is in direct violation of SDCL 15–26A–64 which requires any reference to a part of the record, "shall be made to the particular part of the record, suitably designated, and to the specific pages thereof." If it is a legal argument, it is a violation of SDCL 15–26A–60(6),

which provides failure to cite supporting authority is prohibited and results in the issue being waived. *State v. Pellegrino,* 1998 SD 39, ¶ 22, 577 N.W.2d 590, 599. In *Hughes–Johnson v. Dakota Midland Hosp.,* 86 S.D. 361, 195 N.W.2d 519 (1972), which involved a contract dispute, we held a party who alleged payment of consideration could not rely on general allegations and general denials but must specify the details of the time and amounts of payment of consideration.

[¶ 28.] Based on the total void of factual and legal authority by Northland Ford, the majority opinion when addressing the issue of consideration to Moccasin is relegated to a single sentence, "[a] substantial prize offered for a hole-in-one assuredly enhances a tournament's attraction and presumably increases registration." The theory of a transfer of consideration from Moccasin to the tournament participants is interesting but was never argued by Northland. Apparently Moccasin will now be required to run the gauntlet of a trial based on a legal theory it never had the opportunity to defend against.

[¶ 29.] These legal theories are hardly appropriate for judicial notice under SDCL 19–10–2 that limits itself to facts:

> (1) generally known within the ... jurisdiction of the ... court; or
> (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

We have consistently held that we will affirm the decision of the trial court if there exists any legal basis to support it. *De Smet Ins. Co. of South Dakota v. Gibson,* 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99. For the above reasons I would affirm the summary judgment granted in favor of Moccasin Creek and therefore respectfully dissent on this issue.