**Albert LAU, Plaintiff,**

v.

**BEHR HEAT TRANSFER SYSTEM, INC., Defendant.**

**No. CIV. 00–4127–KES.**

United States District Court,
D. South Dakota,
Southern Division.

June 6, 2001.

A. Russell Janklow, Matthew T. Tobin, Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, SD, for plaintiff.

R. Alan Peterson, Lynn, Jackson, Shultz & Lebrun, Sioux Falls, SD, Alan L. McLaughlin, Carrie D. Storer, Baker & Daniels, Indianapolis, IN, for defendant.

MEMORANDUM OPINION AND OR-DER DENYING IN PART AND GRANTING IN PART DEFEN-DANT'S MOTION FOR SUMMARY JUDGMENT

SCHREIER, District Judge.

[¶ 1] Plaintiff, Albert Lau, brings this action against defendant, Behr Heat Transfer System, Inc., for its failure to place Lau on leave either under the Family and

Medical Leave Act (FMLA) or short-term disability. Lau alleges a violation of the FMLA, breach of contract, wrongful discharge, and negligent infliction of emotional distress. Behr moves for summary judgment on all causes of action. The motion is denied with regard to the FMLA, breach of contract, and wrongful discharge causes of action, and is granted regarding the negligent infliction of emotional distress cause of action.

## FACTS

[¶ 2] Lau began his employment with Behr in 1993 as a machine operator in the press department. Throughout his employment at Behr, Lau received positive job performance evaluations and awards for distinguished service.

[¶ 3] Lau received an Employment Guide in connection with his employment at Behr. The Employment Guide indicates that employees are entitled to receive both short-term disability benefits and leave under the FMLA. Under Behr's short-term disability policy, employees with between five to ten years of employment are entitled to up to six months of leave at full or partial pay.

[¶ 4] Around Memorial Day of 1999, Lau's wife, Carrie, informed Lau that she was seeking a divorce. Lau became angry and depressed. He was drinking to cope with the depression and was hospitalized in Haywarden, Iowa, on June 2–3, 1999.

[¶ 5] Lau returned to work on Monday, June 7, 1999. He felt weak and was very slow at completing his tasks. Lau's immediate supervisor suggested that he go home for the day. Lau left and did not return to work.

[¶ 6] On June 9, 1999, Lau went to the Alcester bar to drown his sorrows. When he returned home that evening, Lau telephoned a friend and threatened to kill himself. The friend found Lau at his home with a loaded shotgun. The friend

called the police and Lau was arrested and taken to the South Dakota Human Services Center in Yankton, South Dakota. Lau was involuntarily committed to the Human Services Center and was diagnosed as having a severe mental illness and as being a danger to himself. He was heavily medicated for one week.

[¶ 7] Later that day, the Alcester police station informed Mrs. Lau of what happened to her husband. That same night, Mrs. Lau called and spoke with Steve Short, Lau's supervisor at Behr. Mrs. Lau claims she informed Short that Lau had been involuntarily committed to the Human Services Center. Short admits he received the call but claims Mrs. Lau did not tell him that Lau was hospitalized in Yankton. Short did not inform the Behr Human Resources Department that he received a call from Mrs. Lau.

[¶ 8] On June 11, 1999, Mrs. Lau went to Behr to meet with Short and Jackie Glenn, the director of Human Resources. Mrs. Lau informed them that Lau had been involuntarily committed to the Human Services Center in Yankton and was suffering from depression and alcoholism. Mrs. Lau asked Behr to give her husband a week of leave. Glenn stated that Lau did not have any sick days left. When Mrs. Lau stated that Lau might be in the hospital for nine weeks, Glenn responded, "Absolutely not, no way." Glenn claims that she discussed Lau's eligibility for short-term disability and FMLA leave with Mrs. Lau. She also claims that she instructed Mrs. Lau to obtain a medical form verifying Lau's disability to work, if he was requesting short-term disability or FMLA leave. Mrs. Lau denies that Lau's eligibility for disability and leave was discussed.

[¶ 9] Glenn provided Mrs. Lau with a voluntary resignation form for Lau to complete so that he wouldn't tarnish his employment record. Glenn also provided

Mrs. Lau with insurance forms that Lau needed to sign to convert his insurance policy to the new insurance company that provided group health insurance to Behr's employees. On the back of the resignation form, Glenn listed instructions for Lau to follow if he decided to resign. The list did not refer to a medical form, short-term disability, or FMLA leave. Glenn instructed Mrs. Lau that the paperwork had to be returned by 10 a.m. on Monday, June 14, 1999.

[¶ 10] Mrs. Lau traveled to the Human Services Center the evening of Friday, June 11, 1999, to meet with Lau. She informed Lau that he had to choose between resigning or requesting leave by submitting a medical form signed by a doctor verifying his disability by Monday. Lau believed that keeping his job was hopeless. He signed the voluntary resignation form and the insurance re-enrollment form.

[¶ 11] Mrs. Lau delivered the paperwork to a Behr security guard on the morning of June 14, 1999. That evening, during a telephone conversation, Lau told Mrs. Lau that he wanted his job back. Mrs. Lau called Short, who told her to have Lau call the Behr plant. Lau called Short and requested his job back. Lau later called Behr and was informed that his position had been filled.

[¶ 12] Lau was discharged from the Human Services Center on July 6, 1999.

## SUMMARY JUDGMENT STANDARD

[¶ 13] Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law." In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. See Anderson, 106 S.Ct. at 2513, 106 S.Ct. 2505.

[¶ 14] **1. Family Medical Leave Act (FMLA)**

[¶ 15] Lau claims that Behr violated the FMLA when it failed to provide him with unpaid leave after being notified that he was hospitalized for a serious health condition. The FMLA entitles eligible employees to a maximum of twelve work weeks of unpaid leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). An eligible employee is one "who has been employed for at least 12 months by the employee with respect to whom leave is requested[.]" 29 U.S.C. § 2611(2)(A)(i). A serious health condition is an "illness, injury, impairment, or physical or mental condition that requires inpatient care or continuing treatment by a health provider." See 29 C.F.R. § 825.114(a). Mental conditions are included in the FMLA's definition of serious health condition. See

*Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 860 (8th Cir.2000). Substance abuse is also identified as a serious health condition in the regulations. *See* 29 C.F.R. § 825.114(d). The employer's duties under FMLA are triggered "when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir.1999).

[¶ 16] Lau was an eligible employee because he had been employed by Behr for at least twelve months. He suffered from a serious health condition that required his hospitalization to treat depression and alcohol dependency for almost a month. Thus, Lau met the criteria for FMLA leave when his wife requested leave on June 11, 1999, and this information was sufficient to put Behr on notice that Lau was requesting FMLA leave.

[¶ 17] Behr contends, however, that Lau's right to leave under the FMLA ceased when he voluntarily resigned on June 14, 1999. An employee who voluntarily resigns cannot claim that he suffered an adverse employment decision under the FMLA. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir.1999). *See also* 29 C.F.R. § 825.312(e). Therefore, this court must determine whether Lau voluntarily resigned when he signed the resignation form shortly after his involuntary commitment to the state mental health hospital.

[¶ 18] Under South Dakota law, a contract entered into by someone who is mentally incompetent is either void or voidable depending on the extent of their mental unfitness at the time they contracted. *See First State Bank of Sinai v. Hyland*, 399 N.W.2d 894, 896 (S.D.1987). "Historically, the void contract concept has been applied to nullify agreements made by mental incompetents who have contracted either entirely without understand-ing or after a judicial determination of incapacity has been entered." *Id.* at 896. A void contract has no legal effect. *Id.*

[¶ 19] Lau signed the resignation form two days after his involuntary mental commitment. Lau was heavily medicated at the time. During the first twenty-four hours, a guard was placed outside his door. On June 11, 1999, the day Lau signed the resignation form, the Yankton County Board of Mental Illness found that Lau suffered from a severe mental illness, was a danger to himself, and they continued his mental commitment. Furthermore, Lau testified that he does not remember signing the resignation form or discussing the forms with his wife.

[¶ 20] After viewing the evidence in the light most favorable to plaintiff as the nonmoving party, the court finds that a question of material fact exists as to whether Lau had the mental capacity on June 11, 1999, to sign a resignation form. If Lau was not competent, then his resignation was either void or voidable, depending on the extent of his unfitness on June 11, 1999. If Lau's resignation was either void or voidable, then a genuine issue of material fact exists as to whether Lau was entitled to FMLA leave. Defendant's motion for summary judgment on the FMLA cause of action is denied.

[¶ 21] **2. Breach of Contract**

[¶ 22] Lau alleges that he was entitled to receive short-term disability benefits under the terms of his Employment Guide. Under the short-term disability provisions of the Guide, an employee employed for five years, but less than ten years, is entitled to receive 100 percent of his monthly pay for the first two months of disability, 75 percent of his pay for the second two-month period of disability, and 50 percent of his pay for the third two-month period of disability.

[¶ 23] Behr claims that the short-term disability provision in the Employment Guide is not enforceable because the handbook is not a contract. The South Dakota Supreme Court recognized in *Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275 (S.D.1983), that an employee handbook may create an implied contract. In the employment-at-will context, an implied contract arises when the handbook contains language indicating a clear intention on the employer's part to surrender its statutory power to terminate its employees at will. *See Butterfield v. Citibank of South Dakota*, 437 N.W.2d 857, 859 (S.D. 1989). An implied contract also arises when an employer makes a specific oral promise to an employee regarding future promotion to a certain position. *See Larson v. Kreiser's, Inc.*, 427 N.W.2d 833, 834 (S.D.1988). Similarly, specific language in a handbook which describes in detail employee compensation and fringe benefits may be considered a contract. *See Bolling v. Clevepak Corp.*, 20 Ohio App.3d 113, 484 N.E.2d 1367, 1375–76 (Ohio 1984); *Fulton–DeKalb Hosp. Auth. v. Metzger*, 203 Ga.App. 595, 417 S.E.2d 163, 164 (1992); *Panto v. Moore Business Forms, Inc.*, 130 N.H. 730, 735, 547 A.2d 260, 264 (1988); *Brown v. Tonka Corp.*, 519 N.W.2d 474, 477 (Minn.App.1994).

[¶ 24] The unilateral announcement of compensation and fringe benefits by an employer may be treated as an offer subject to an employee's acceptance. An employees continued performance of his duties expresses his acceptance of the unilateral contract terms. *See Panto*, 547 A.2d at 264. The South Dakota Supreme Court has recognized the enforceability of unilateral contracts which were accepted by the offeree with performance. *See Harms v. Northland Ford Dealers*, 602 N.W.2d 58, 61 (S.D.1999).

[¶ 25] Behr's Employment Guide sets forth in specific language the fringe benefits that its employees are entitled to receive if they are employed by Behr. The description of short-term disability benefits in the Guide indicates a clear intention on the employer's part to extend these benefits to its employees and thus created an implied contract. Lau, by accepting employment at Behr, expressed his acceptance of these unilateral contract terms.

[¶ 26] Behr claims that the disclaimer language in the Guide indicates its intention not to create an enforceable contract. The disclaimer language, however, simply provides that the Guide is subject to change and does not guarantee that "any benefit program will be continued for any period of time." The short-term disability benefit was not changed or discontinued while Lau was employed at Behr. The disclaimer language may give Behr the right to change or discontinue the benefit by amending its Guide, but it does not give Behr the right to deny the benefit to an employee while the Guide is in full force and effect. The court finds that the Employment Guide did create a valid and enforceable contract and therefore, Behr's motion for summary judgment on the breach of contract cause of action is denied.

[¶ 27] **3. Wrongful Discharge**

[¶ 28] Lau claims that Behr's refusal to reinstate him after wrongfully denying him FMLA leave and short-term disability leave constitutes wrongful discharge. South Dakota is an employment-at-will state. *See* SDCL 60-4-4. The South Dakota Supreme Court acknowledged a public policy exception to the employment-at-will doctrine in *Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225, 227 (S.D. 1988). "To state a cause of action under this exception, the employee must plead and prove that a substantial public policy may have been violated." *Niesent v. Homestake Min. Co.*, 505 N.W.2d 781, 783

(S.D.1993). This exception was expanded to include employees fired for filing worker's compensation claims in *Niesent v. Homestake Min. Co.,* 505 N.W.2d at 783. The Supreme Court found that South Dakota has a strong public policy at the core of its worker's compensation laws to ensure that workers in the course of employment be compensated without interference. *See id.* at 784. The court further found that retaliatory discharge violates this legislative mandate. *See id.*

[¶ 29] Congress articulated a public policy to provide "unpaid job protected leave and the continuation of any existing health insurance coverage during an employee's serious illness. The fundamental rationale for such a policy is that it is unfair for an employee to be terminated when he or she is struck with a serious illness and not capable of working." S.Rep. No. 3, 103d Cong., 1st Sess.1993, 1993 U.S.C.C.A.N. 2, p. 13. Congress clearly intended that workers should be able to return to their jobs after leave for a serious health condition. Retaliatory discharge undermines and violates this legislative mandate. Employees who suffer a serious health condition should not have to forfeit their job and their health insurance. Based on the rationale set forth by the South Dakota Supreme Court in *Niesent,* if this issue came before the South Dakota Supreme Court, the court would recognize that the public policy exception to the at-will doctrine includes a cause of action for wrongful discharge if the dismissal is in retaliation for requesting FMLA leave.

[¶ 30] After Lau was released from the Human Services Center, Behr agreed to reinstate Lau to his job, but refused to pay him during his leave of absence. 29 U.S.C. § 2612(d)(2)(B) allows an eligible employee to elect to substitute paid sick leave for any of the twelve-week FMLA leave period. Lau was only given the choice of unpaid leave and the opportunity to return to his job or the option of severance pay and termination of his employment. He was not offered his statutory rights under the FMLA. Thus, there is a question of material fact as to whether he was terminated in retaliation for asserting his rights under the FMLA.

### [¶ 31] 4. Negligent Infliction of Emotional Distress

[¶ 32] Lau abandoned his cause of action for negligent infliction of emotional distress during oral argument. Behr is entitled to summary judgment on this issue. Accordingly, it is hereby

[¶ 33] ORDERED that Behr's motion for summary judgment on the FMLA, breach of contract, and wrongful discharge causes of action is denied.

[¶ 34] IT IS FURTHER ORDERED that Behr's motion for summary judgment on the negligent infliction of emotional distress cause of action is granted.