2002 SD 40

Barry BAYER and Sylvia Bayer,
Plaintiffs and Appellees,

v.

PAL NEWCOMB PARTNERS,
a Partnership, Defendant,

and

PAL, Inc. a South Dakota Partnership,
Defendant and Appellant,

and

Gale E. Fisher and Pamela
J. Fisher, Plaintiffs,

v.

PAL Newcomb Partners, a Defendant,
Partnership,

and

Three B., Inc., Defendant and Appellee.

Nos. 21815, 21816.

Supreme Court of South Dakota.

Argued Oct. 2, 2001.

Decided March 27, 2002.

---

Arlie Brende, Sioux Falls, South Dakota, for plaintiffs and appellees.

David L. Nadolski of Lynn, Jackson, Shultz & Lebrun, Sioux Falls, South Dakota, for defendant and appellant.

GORS, Acting Justice.

[¶ 1.] PAL, Inc., (PAL) appeals a money judgment in favor of Barry and Sylvia Bayer and Three B, Inc. based on negligent misrepresentation. We reverse.

## FACTS

[¶ 2.] River Run was a Planned Development District in Sioux Falls, South Dakota, located next to Westward Ho Country Club. West 12th Street ran along the northern boundary. Gage Brothers Concrete was located next to Interstate 29 on the west. Wooded land owned by the City of Sioux Falls bordered the Sioux River to the east.

[¶ 3.] River Run was originally farmland owned by the Newcomb family. Development efforts in the 1980's left the project on the brink of foreclosure by 1992. The project needed an infusion of money. Al Lewis and his brother Paul had money and a history of successful development and a reputation for business acumen. They owned Lewis Square and Lewis Square II on South Minnesota Avenue in Sioux Falls. PAL was incorporated and stood for the initials of Paul and Al Lewis, the sole stockholders. PAL reportedly infused more than $2,000,000 in River Run.

[¶ 4.] On May 28, 1993, Barry Bayer signed a purchase agreement for nine lots at River Run. On September 28, 1993, title to the lots was taken by Three B, Inc. (Three B), which Bayer had incorporated by his lawyer, Gale Fisher, to develop his investment at River Run. Bayer sold one lot to his mother, Sylvia Bayer, who built a twin home on her lot. Bayer built a twin home on his lot and sold one half of the twin home to his lawyer, Gale Fisher.

[¶ 5.] River Run did not perform as well as Bayer expected so he, his mother and his lawyer sued PAL for negligence, negligent and fraudulent misrepresentation, constructive fraud, deceit and breach of fiduciary duty. The trial court found for Bayer, his mother and lawyer on negligent misrepresentation and against them on all other claims.

[¶ 6.] Bayer claimed that PAL made the following misrepresentations:

1. that Gage Brothers was looking for another location;

2. that statements made in the Argus Leader misrepresented River Run;

3. that a strip mall would be developed on the property;

4. that River Run was going to be the next Prairie Tree (implying that an upscale development was planned);

5. that apartments similar to Dakota Dunes would be built at River Run (implying that an upscale development was planned);

6. that a twin home worth $150,000 to $175,000 would be built across the street from Bayer;

7. that Al Lewis was planning to build a mansion at River Run;

8. that most of the trees in the development would remain;

9. that the listing prices in the original literature were higher than the actual selling prices;

10. that this was "another" PAL development, when this was the first PAL development; and

11. that PAL failed to reveal that there had been no interest in River Run when Bayer bought his lots.

Gage Brothers did not move. Subsidized housing was built instead of upscale housing. Lewis did not build a mansion. Trees were cut down. The strip mall did not materialize. Instead, three used car lots, a service and repair shop, a fast-food restaurant and three apartment projects were located at River Run.

[¶ 7.] PAL lost $500,000 at River Run. Bayer, his mother and lawyer had homes which they could not sell for what they had spent to build them and Three B had seven undeveloped lots which it could not sell for a profit. The trial court set the loss to Bayer's house at $115,000, the loss to Sylvia Bayer's house at $235,000 and the loss in value of Three B's seven undeveloped lots at $42,000.

PAL appeals raising the following two issues:

1. Whether the trial court erred in finding that PAL made negligent misrepresentations.

2. Whether Barry Bayer or Three B is liable for any negligent misrepresen-

tations to the Fishers and therefore liable under PAL's cross claim.

## STANDARD OF REVIEW

[¶ 8.] Our standard of review is well settled. Based on a review of the entire record, a trial court's findings of fact will not be overturned unless they are clearly erroneous. *Hendriks v. Anderson*, 522 N.W.2d 499, 503 (S.D.1994). We review conclusions of law under a *de novo* standard, with no deference to the trial court's conclusions of law. *Mid–Century Ins. Co. v. Lyon*, 1997 SD 50, ¶ 4, 562 N.W.2d 888, 890; *Shedd v. Lamb*, 1996 SD 117, ¶ 17, 553 N.W.2d 241, 244. When the issue involves a mixed question of law and fact requiring the application of a legal standard, this Court will treat the issue as a question of law subject to *de novo* review. *Permann v. South Dakota Dep't of Labor, Unemployment Ins. Div.*, 411 N.W.2d 113, 119 (S.D.1987).

## ANALYSIS AND DECISION

[¶ 9.] **WHETHER THE TRIAL COURT ERRED IN FINDING THAT PAL MADE NEGLIGENT MISREPRESENTATIONS.**

[¶ 10.] Everyone agreed that River Run did not live up to their expectations. This is not a contract action because there was no contract between Bayer and PAL upon which a suit could be based. In the absence of a contract, Bayer's only hope was a tort action. He tried to fit his claim into negligence, negligent and fraudulent misrepresentation, constructive fraud, deceit and breach of fiduciary duty. After considering the evidence, the trial court decided that "the facts in this case exactly fits the recovery by [Bayers] in the lawsuit; that [Bayers] ... reasonably relied upon the representations made by [PAL] to their detriment...."

[¶ 11.] The tort of negligent misrepresentation occurs when "in the course of business or any other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in their business transactions, without exercising reasonable care in obtaining or communicating the information." *Meyer v. Santema*, 1997 SD 21, ¶ 9, 559 N.W.2d 251, 254 (citing Restatement (Second) of Torts § 552 (1997)). In *Rumpza v. Larsen*, this Court stated that a party seeking relief for the tort of negligent misrepresentation must prove:

> knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will ... be injured in person or property. Finally, the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information and the other giving the information owes a duty to give it with care.

1996 SD 87, ¶ 19, 551 N.W.2d 810, 814 (quoting *Swanson v. Sioux Valley Empire Electric Ass'n, Inc.*, 535 N.W.2d 755, 757 (S.D.1995)) (additional citations omitted). "Generally, representations as to future events are not actionable and false representations must be of past or existing facts." *Meyer*, 1997 SD 21 at ¶ 11, 559 N.W.2d at 255 (citing *Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120, 124 (S.D.1977)). This standard applies whether the action is for fraudulent misrepresentation or negligent misrepresentation. *Meyer*, 1997 SD 21 at ¶ 11, 559 N.W.2d at 255 n. 5.

[¶ 12.] To establish negligent misrepresentation, Bayer had to prove:

1. PAL supplied false information to Bayer;

2. PAL supplied the information in the course of a transaction in which PAL had a financial interest;

3. PAL was negligent in obtaining or communicating the information;

4. PAL supplied the information intending or knowing that Bayer would rely on the information; and

5. Bayer acted reasonably in relying on the information, to his detriment.

*Meyer*, 1997 SD 21 at ¶ 9–11, 559 N.W.2d at 254–55; *Rumpza*, 1996 SD 87 at ¶ 19, 551 N.W.2d at 814.

[¶ 13.] The trial court did not find that any of the representations were false when they were made, only that they did not become true in the future. For example, Finding of Fact 11 includes the following:

> Neither the article or the conversations [with PAL's agent Jay Zea] were in the nature of future expectations, but rather were present statements of what Pal [sic] expected its plan for the development to be....

Our review of the record discloses that the trial court's finding is not supported by the record and therefore is clearly erroneous and that the trial court erred as a matter of law. The trial court held in Conclusion of Law 5 that:

> In this case, Defendant Pal [sic] made present statements of a future fact. Simply because these things were going to be completed in the future does not make them future events. That would necessarily mean that a person can never recover for something that was said at the present time.

## ARE NEGLIGENT MISREPRESENTATIONS AS TO FUTURE EVENTS ACTIONABLE?

[¶ 14.] The trial court's ruling that present representations as to future events are actionable is the crux of this appeal.

Generally, representations as to future events are not actionable and negligent misrepresentations as well as fraudulent misrepresentations must be of past or existing facts. *Meyer*, 1997 SD 21 at ¶ 11, 559 N.W.2d at 255 (citing *Aschoff*, 261 N.W.2d at 124). "A party cannot justifiably rely upon conjecture about future events." *Gatz v. Frank M. Langenfeld & Sons Constr. Inc.*, 356 N.W.2d 716, 718 (Minn.Ct.App.1984) cited with approval in *Meyer*, 1997 SD 21 at ¶ 11, 559 N.W.2d at 255 n. 5.

[¶ 15.] The trial court concluded that PAL made "present statements of a *future* fact" (emphasis added) and that the plaintiffs could recover for negligent misrepresentation for "something that was said at the present time." The trial court's conclusion of law is contrary to our holding in *Meyer*. The trial court did not find that PAL made any misrepresentations about past or existing facts. Rather, the trial court found PAL's representations concerned future events regarding the development of River Run. Representations about the future development of River Run are not actionable under the general rule set out in *Meyer*.

[¶ 16.] The general rule that representations as to future events are not actionable has one exception. In *Reitz v. Ampro Royalty Trust*, 75 S.D. 167, 171–72, 61 N.W.2d 201, 203 (1953) this Court stated, "[a] misrepresentation as to a future event may be actionable where the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentations relate." *Id.* at 203. *See also Aschoff*, 261 N.W.2d at 124.

[¶ 17.] The exception does not apply in this case. Bayer knew this was a failed development that was being resurrected. The Newcombs were his neighbors and he knew that they had been unsuccessful in their efforts to develop River Run in the 1980's. Bayer was the first to buy land at River Run. In addition to his homesite, Bayer bought seven other lots at River Run and had his lawyer, Fisher, create Three B for the purposes of developing these lots for sale. He also sold Fisher one half of his homesite and arranged construction of Fisher's side of the twin home on the lot.

[¶ 18.] Bayer was not a novice to risk. He had built and managed real estate. Bayer understood the risk involved in developing River Run as well as PAL. Bayer was on equal footing with PAL. Therefore, the exception does not apply and PAL is not liable for representations concerning future events.

## EXAMINING THE REPRESENTATIONS

[¶ 19.] Examination of the alleged misrepresentations reveals that they were only made about future events, not past or present facts. In addition, some of the representations could not have been relied on because they were made after Bayer purchased his lots.

### Gage Brothers

[¶ 20.] Bayer claims PAL represented that Gage Brothers was looking for another location. Gage Brothers is a concrete contractor located between River Run and Interstate 29. Despite the benefits of business and industry, a concrete plant is dusty, noisy and unsightly in a residential community. Al Lewis testified that Gage Brothers' continued presence next to River Run probably hurt the development. The appraisers who testified for both sides also agreed that the continued presence of the Gage Brothers' plant had a negative effect on the value of property at River Run.

[¶ 21.] The Gage Brothers situation presents a perfect contrast between representations as to past or present facts and future events. For example, "Gage Brothers moved last year" would be a representation of a past fact. It would be either true or false. Gage Brothers would either have moved or not moved. By further example, "Gage Brothers is moving today" would be a representation of a present fact. It would either be true or false. Gage Brothers would either be moving today or not. By final example, Bayer's direct testimony that Zea "told me Al Gage had been looking for either another location or that they had been offered a fairly substantial amount of money for their present location" would be a representation that implies that Gage Brothers might move sometime in the future. Not even Gage Brothers knew whether they would actually move or not. Whether Gage Brothers would move in the future was not within PAL's knowledge or control. Even if Gage Brothers was planning to move, circumstances might change. Negligent or misrepresentations about future events cannot be actionable because the future cannot be foreseen or guaranteed.

[¶ 22.] However, the trial court did not find any negligent representations concerning the possibility that Gage Brothers might move. Bayer apparently failed to convince the trial court on this issue. Therefore, our decision is not based on the alleged misrepresentation that Gage Brothers might move.

### The Argus Leader Article

[¶ 23.] At the heart of this case is an article which the Sioux Falls Argus Leader ran under the headline "River Run resurrected" on June 13, 1993. The article reported that the developers "hope" to nestle upscale homes near the river creating a neighborhood centered on recreation and beauty. PAL's real estate agent, Jay Zea, said he "hoped" the need for residential lots, the park-like setting and aggressive sales would "make River Run succeed this time around." Zea also "envisioned" offices tucked in the trees. The article quotes Zea as follows:

> "I *think* it's going to bring it upscale." (emphasis added).

The article closes with the following:

> "Zea *sees* the project as a neighborhood improvement, a *chance* to help other business on West 12th and a *way* to take traffic off 41st Street ...." (emphasis added).

The article makes it clear that River Run had failed before and the new effort was a rebirth. Reference is made to a two million dollar development with apartments, a strip mall, other stores, offices, a convenience store, hotel and recreation area. Zea also said that most trees would stay in the development. The trial court found that a reasonable reading of the article would be that "hope" meant the development would be successful and would include the items listed in the article.

[¶ 24.] It is interesting to note that Bayer made the most strident claims for success contained in the article. Speaking for Three B, Bayer said he planned to build homes from 1,900 to 2,500 square feet valued at $220,000 to $260,000. He was quoted as saying:

> "I *know* they're going to put in a first-class development and to our way of thinking it made sense to start building homes." (emphasis added).

Bayer indicated he would build a house at River Run and hoped Westward Ho Country Club would let residents drive their carts over to the course for golf or to the clubhouse for dinner. Bayer went on to say:

"We're looking to that upper-end clientele and people who enjoy golf and enjoy living in a golf course setting."

Bayer's quote was repeated twice, once in the article and once in a separate, large, bold block quote. Note the contrast between Zea's "hopes," "envisions", "sees," "a chance" and "thinks" with Bayer's definite "I know," "will build" and "we're looking."

[¶ 25.] The trial court did not find that these statements were false when they were made. In fact, the trial court specifically found "Jay Zea, who was the real estate agent for PAL, testified that there was nothing contained in the article that was an error." The trial court went on to find that Bayer reasonably relied on the article, including his own statements that he would build $200,000 to $260,000 twin homes.

■ [¶ 26.] Bayer could not have relied on the statements made in the Argus Leader article. Bayer bought his lots on May 28, 1993, by signing a purchase agreement. The article appeared on June 13, 1993. Although Bayer now claims he did not actually buy the lots until after the Argus article ran (perhaps when Three B received a warranty deed on September 28, 1993), he clearly thought he owned the lots when the article was published on June 13. The article stated, "Three B. Inc. bought seven residential lots that border Westward Ho's eighth hole." The article went on to say that "[t]he company plans to build twin homes that ... range in price from $200,000 to $260,000, *said Barry Bayer* .... Construction will begin July 15 on the first twin homes ...." (emphasis added). Bayer would not propose to build $200,000 to $260,000 twin homes on lots he had not purchased. The simple fact is that Bayer bought the lots in May and received the deed later in September. The trial court was clearly erroneous when it found that Bayer relied on the Argus Leader article which appeared after he bought his lots.

## Other Misrepresentations About Future Events

■ [¶ 27.] Bayer also claimed that PAL misrepresented the following: that a strip mall would be developed on the property; that River Run was going to be the next Prairie Tree; that apartments similar to Dakota Dunes would be built at River Run; that a twin home worth $150,000 to $175,000 would be built across the street from Bayer; that Al Lewis was planning to build a mansion at River Run; that most of the trees in the development would remain; and that the listing prices in the original literature were higher than the actual selling prices. The trial court also made extensive findings that covenants filed by PAL were not enforced or applied to all of the property in River Run. However, none of the covenants were filed before Bayer bought his lots and thus could not have been relied on by Bayer.

[¶ 28.] All of the foregoing alleged misrepresentations had to do with the neighborhood being "upscale" with expensive houses or desirable businesses that would enhance the value of Bayer's home and lots. Instead, lower class businesses, dwellings and apartments left Bayer with lots he could not develop and sell and a house that was overpriced for the neighborhood. All of the representations about upscale development were about future events which did not come to fruition. Bayer is not the only one who took the risk. Paul and Al Lewis risked their money and had lost at least $500,000 at the time of trial because River Run did not meet expectations. Developers take risks. Bayer wanted to be a developer, too. He wanted to develop seven lots along the golf course and make money. However, when

he lost money, he did not want to accept the risk. Bayer wanted PAL to not only envision the future but to guarantee it.

[¶ 29.] A similar situation occurred in *Fields v. Melrose Limited Partnership,* 312 S.C. 102, 439 S.E.2d 283 (App.1993). In *Fields,* the buyers of a membership in a resort club sued Melrose for negligent misrepresentation. As part of a marketing campaign, Melrose made representations that an ocean pier, cottages with 200 bedrooms, a chapel and nice roads would be built in the development. Melrose also represented that the price of an individual interest in Melrose Club would increase to $100,000 at the end of the year.

[¶ 30.] The planned improvements never came to fruition, and the membership prices never reached $100,000. At the time of the hearing, memberships were selling for less than $35,000. The buyers contended that they relied on Melrose's representations and sued for negligent misrepresentation. The South Carolina Supreme Court disagreed and found that all of Melrose's statements related to future events, not existing facts. *Id.* at 285. Moreover, the court pointed out, the statements were not false when made. *Id.*

[¶ 31.] *Hydro Investors, Inc. v. Trafalgar Power, Inc.,* 227 F.3d 8 (2d Cir.2000) also addressed a similar situation. In *Hydro Investors* a power company, Trafalgar, sued the engineering firm of hydroelectric power plants, claiming that it made negligent misrepresentations. Specifically, Trafalgar argued that the firm was negligent in its estimate of projected energy outputs from proposed hydroelectric plants. The Second Circuit disagreed, stating that Trafalgar's claim "fails because the energy output predictions were mere promises of future output as opposed to present representations of existing fact. The alleged misrepresentations are ... just the sort of representations about future events that cannot support a claim for negligent misrepresentation." *Id.* at 21. Additionally, the *Hydro Investors* Court noted that even if the engineering firm made representations sufficient to make such a claim, Trafalgar had adequate knowledge that the project's financial success was doubtful. *Id.* Particularly, the key player in Trafalgar was already active in the real estate business. *Id.*

### Another PAL Development

[¶ 32.] Bayer also claims River Run was represented as "another" PAL development, when this was PAL's first development. The trial court did not find any negligent representation concerning whether this was "another" PAL development. Therefore, the judgment is not based on the alleged misrepresentation because Bayer failed to convince the trial court.

### No Interest in River Run

[¶ 33.] Bayer also claimed that PAL failed to reveal that there had been no interest in River Run when Bayer bought his lots. As noted earlier, Bayer knew this was a failed development that was being resurrected. The Newcombs were his neighbors and he knew that they had been unsuccessful in their efforts to develop River Run in the 1980's. Bayer was the first to buy land at River Run. The trial court did not find that PAL failed to reveal that there was no one interested in River Run. Therefore, the judgment is not based on the alleged misrepresentation because Bayer failed to convince the trial court.

### CONCLUSION

[¶ 34.] The trial court erred as a matter of law when it concluded that present representations as to future events could be the basis for finding negligent misrepresentation. The trial court was also

clearly erroneous when it found that Bayer relied on the representations made in the Argus Leader article which was published after Bayer bought his lots. Therefore, we reverse the judgment in favor of Barry Bayer, Sylvia Bayer, and Three B.*

[¶ 35.] GILBERTSON, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.

---

* The claims of Sylvia Bayer and Three B were derivative of representations made to Barry Bayer, since Barry Bayer was the original purchaser from PAL.