*This opinion is subject to revision before final publication in the Pacific Reporter*

**2014 UT 55**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

MITCH TOMLINSON,
*Appellee,*

*v.*

NCR CORPORATION,
*Appellant.*

No. 20130195
Filed November 25, 2014

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Vernice S. Trease
No. 090905865

Attorneys:

Mitch Tomlinson, appellee pro se

Michael E. Blue, Liesel B. Stevens, Salt Lake City, for appellant

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE LEE joined.

JUSTICE PARRISH, opinion of the Court:

### INTRODUCTION

¶1 Following his termination from NCR Corporation, Appellee Mitch Tomlinson brought suit challenging his termination on a variety of grounds. The district court dismissed most of Mr. Tomlinson's claims pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. Two of Mr. Tomlinson's claims survived NCR's motion to dismiss: (1) wrongful termination in breach of an employment contract and (2) breach of the implied covenant of good faith and fair dealing. The district court subsequently granted NCR's motion for summary judgment on both claims, reasoning that Mr. Tomlinson had failed to present any evidence of an employment contract between the parties sufficient to overcome the presumption of at-will employment under Utah law.

¶2    Mr. Tomlinson timely appealed.  The court of appeals affirmed the rule 12(b)(6) dismissal but reversed the district court's grant of summary judgment.  NCR filed a petition for writ of certiorari, which we granted.  On certiorari, we examine "[w]hether the court of appeals erred in holding that NCR's Corporate Management Policy Manual could be read to create an implied contract rebutting the presumption that Mr. Tomlinson was an at-will employee and also permitting a claim for breach of the covenant of good faith and fair dealing."

¶3    We reverse the court of appeals because the language contained in NCR's policy manual does not evidence an intent to form an implied-in-fact contract sufficient to overcome the presumption of at-will employment.

## BACKGROUND

¶4    Mr. Tomlinson was employed by NCR as a customer engineer, a position in which he was responsible for servicing and repairing ATMs at customer locations.  NCR terminated Mr. Tomlinson's employment for "failure to properly manage [his] time reporting and improve [his] call management procedures."  At the time of his termination, Mr. Tomlinson had been employed by NCR for approximately ten years.

¶5    Mr. Tomlinson, appearing pro se, filed suit against NCR, alleging thirteen causes of action.  NCR moved to dismiss eleven of Mr. Tomlinson's claims pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure.  After briefing and a hearing, the district court granted NCR's motion to dismiss.  Following the court's order, Mr. Tomlinson's only surviving claims were for wrongful discharge based on an alleged breach of contract and breach of the implied covenant of good faith and fair dealing.

¶6    The parties commenced discovery, after which NCR moved for summary judgment on Mr. Tomlinson's remaining claims.  The district court granted NCR's motion for summary judgment, and Mr. Tomlinson filed a motion to alter or amend the judgment pursuant to rule 59 of the Utah Rules of Civil Procedure.  The court denied Mr. Tomlinson's motion, and he timely appealed.

¶7    Before the court of appeals, Mr. Tomlinson argued that the district court erred when it dismissed his claims under rule 12(b)(6) of the Utah Rules of Civil Procedure. *Tomlinson v. NCR Corp.*, 2013 UT App 26, ¶ 5, 296 P.3d 760.  He also argued that the district court's grant of summary judgment on his remaining two claims was

improper. *Id.* ¶ 6. Specifically, Mr. Tomlinson argued that NCR's Corporate Management Policy Manual (Manual) created an implied contract that rebutted the presumption of at-will employment under Utah law. *Id.* ¶ 31.

¶8 The court of appeals affirmed the rule 12(b)(6) dismissal of Mr. Tomlinson's claims, but reversed the district court's grant of summary judgment on his claims for wrongful discharge and breach of the implied covenant of good faith and fair dealing. *Id.* ¶ 47. The court of appeals concluded that Mr. Tomlinson had raised an issue of material fact as to whether NCR intended to limit its right to terminate Mr. Tomlinson at will. *Id.* ¶ 45. Because the court of appeals concluded that Mr. Tomlinson had raised a factual dispute as to the existence of an implied contract, it also reversed summary judgment on his claim of breach of the implied covenant of good faith and fair dealing. *Id.* ¶ 46.

¶9 We granted certiorari on the issue of "[w]hether the court of appeals erred in holding that [NCR's] Corporate Management Policy Manual could be read to create an implied contract rebutting the presumption that [Mr. Tomlinson] was an at-will employee and also permitting a claim for breach of the covenant of good faith and fair dealing." We have jurisdiction pursuant to section 78A-3-102(3)(a) of the Utah Code.[1]

---

[1] Following oral argument, Mr. Tomlinson filed a motion to compel arbitration. We hereby deny the motion because Mr. Tomlinson waived his right to arbitrate. A party who has agreed to an arbitration clause waives the right to arbitrate "if the opposing party can demonstrate (1) that the party seeking arbitration substantially participated in the underlying litigation to a point inconsistent with the intent to arbitrate; and (2) that this participation resulted in prejudice to the opposing party." *Educators Mut. Ins. Ass'n v. Evans*, 2011 UT App 171, ¶ 65, 258 P.3d 598 (internal quotation marks omitted). In this case, Mr. Tomlinson has actively participated in litigation since 2009, including filing a complaint, conducting discovery, pursuing his case through summary judgment, and appealing the trial court's judgment. NCR will suffer prejudice if Mr. Tomlinson is allowed to compel arbitration because of the wasted expense incurred in the last five years of litigation and additional expense of arbitration.

NCR seeks an award of attorney fees under rule 33(a) of the Utah

(continued...)

## STANDARD OF REVIEW

¶10 On certiorari, "we review the decision of the court of appeals, not the decision of the district court." *Bangerter v. Petty*, 2009 UT 67, ¶ 10, 225 P.3d 874 (internal quotation marks omitted). "We review the court of appeals' decision for correctness, with particular attention to whether [it] reviewed the [district] court's decision under the correct standard." *Id.* (alterations in original) (internal quotation marks omitted). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." UTAH R. CIV. P. 56(c). We view all of the facts and any reasonable inferences drawn therefrom "in the light most favorable to the nonmoving party." *Massey v. Griffiths*, 2007 UT 10, ¶ 8, 152 P.3d 312 (internal quotation marks omitted). But "the district court's legal conclusions and ultimate grant or denial of summary judgment are reviewed for correctness." *Id.*

## ANALYSIS

### I. MR. TOMLINSON FAILED TO OVERCOME THE PRESUMPTION OF AT-WILL EMPLOYMENT

¶11 NCR argues that the court of appeals erred when it reversed the district court's grant of summary judgment. The district court granted NCR's motion for summary judgment because Mr. Tomlinson failed to present "evidence that . . . the intent of NCR in this case was to enter into an agreement" sufficient to overcome Utah's presumption of at-will employment. An employment relationship for an indefinite term gives rise to a presumption that the employment relationship is at will. *Fox v. MCI Commc'ns Corp.*, 931 P.2d 857, 859 (Utah 1997); *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1000 (Utah 1991). Such a relationship allows "both the employer and the employee to terminate the employment for any reason and allows the employer to do so without extending any procedural safeguards to an employee." *Fox*, 931 P.2d at 859; *see also Hansen v. Am. Online, Inc.*, 2004 UT 62, ¶ 7, 96 P.3d 950 (noting that an at-will employment relationship may be terminated by either

---

[1](...continued)
Rules of Appellate Procedure, which provides that the court may award reasonable attorney fees if a motion is either "frivolous or for delay." While we deny the motion to compel arbitration, we decline to award fees.

party "for any reason (or no reason) except where prohibited by law"). But a "plaintiff/employee may overcome this presumption by showing that the parties created an implied-in-fact contract, modifying the employee's at-will status." *Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 333 (Utah 1992). In the absence of an express employment agreement, the employee bears "the burden of establishing the existence of an implied-in-fact contract provision." *Johnson*, 818 P.2d at 1001.

¶12 "The existence of such an agreement is a question of fact which turns on the objective manifestations of the parties' intent. . . . [and] is primarily a jury question." *Id.* But we may properly determine the existence of an implied contract as a matter of law if no reasonable jury could find such a contract and if the evidence relied on by the parties presents no triable issues of fact. *Cabaness v. Thomas*, 2010 UT 23, ¶ 56, 232 P.3d 486. Relevant evidence of the parties' intent may include announced personnel policies, employment manuals, the course of conduct between the parties, and relevant oral representations. *Id.* ¶ 57; *see also Hodgson*, 844 P.2d at 333–34; *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044 (Utah 1989).

¶13 Evidence of an implied contract "must meet the requirements for an offer of a unilateral contract." *Johnson*, 818 P.2d at 1002. This is because the employer's promise of employment consistent with certain provisions for an indefinite term constitutes the employer's consideration for the contract and the terms of the contract itself. *Id.* In return, the employee's performance of his job consistent with the promised provisions constitutes the employee's acceptance of the contract terms, as well as his consideration. *Id.* Accordingly, the employer must communicate a manifestation of intent to the employee that is sufficiently definite to constitute a contract provision. *Id.*; *see also Cabaness*, 2010 UT 23, ¶ 55.

¶14 We have consistently held that "an employer's internally adopted policies and procedures concerning discharge can be sufficient evidence to rebut the presumption of at-will employment and can, in effect, become part of the contractual relationship between the employer and the employee." *Caldwell v. Ford, Bacon & Davis Utah, Inc.*, 777 P.2d 483, 485 (Utah 1989); *see also Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 54 (Utah 1991); *Berube*, 771 P.2d at 1044–46. In *Caldwell*, we recognized that the existence of an internal policy manual detailing procedures required before an employee could be terminated for cause may be sufficient to raise a factual

question as to whether the presumption of at-will employment had been rebutted. 777 P.2d at 485–86.

¶15 In this case, Mr. Tomlinson points to NCR's Corporate Management Policy Number 422 (Policy 422) and Policy Number 210 (Policy 210) in support of his contention that NCR was required to comply with internal procedures prior to terminating his employment.[2] Mr. Tomlinson argues that Policy 422 and Policy 210 both evidence NCR's intent to create an implied-in-fact contract with its employees.

*A. Policy 422 Does Not Constitute an Implied-in-Fact Contract*

¶16 NCR argues that the court of appeals erred when it drew a negative inference from Policy 422's distinction between tactical and core workforce employees to support its conclusion that Policy 422 constituted an implied-in-fact employment contract. Policy 422 specifically designates NCR's tactical workforce employees as at will, but it is silent as to the status of NCR's core workforce. *Tomlinson v. NCR Corp.*, 2013 UT App 26, ¶¶ 34, 36, 296 P.3d 760. Mr. Tomlinson asserts that Policy 422's silence regarding the at-will status of core employees gives rise to an inference that NCR intended to limit its ability to terminate those employees without cause. *Id.* The court of appeals relied on our ruling in *Cabaness* to support its conclusion that the limited at-will designation of tactical employees was sufficient to raise a factual dispute as to the at-will status of core employees. *Id.* We conclude that any negative inference to be drawn from Policy 422 is insufficient to overcome the presumption of at-will employment under Utah law. Accordingly, the court of appeals erred.

¶17 Policy 422 distinguishes between NCR's "core workforce who perform ongoing work which is necessary for the continuing operation of the business and a workforce buffer that sets the staffing arrangements that will allow for expansion and

---

[2] At oral argument, Mr. Tomlinson also relied on Policy Number 706, arguing that Policy 210 must be read in conjunction with NCR's internal dispute resolution processes contained in Policy 706. However, this argument was not preserved at the district court, nor mentioned in Mr. Tomlinson's briefs. Accordingly, we do not address this argument. "We generally will not consider an issue unless it has been preserved in the court below." *Baird v. Baird*, 2014 UT 8, ¶ 20, 322 P.3d 728 (internal quotation marks omitted).

contraction." *Id.* (internal quotation marks omitted). Supplement A to Policy 422 describes the tactical workforce, which consists of temporary employees who are employed with NCR on an as-needed basis. These employees are distinguished from those in the core workforce, who are expected to work a certain number of hours per pay period. Section 5 of Supplement A, which specifically governs tactical employees, states, "[E]mployment at NCR is AT WILL. No statement in this policy implies any guarantee of employment or length of employment." But Policy 422 does not contain any similar statements regarding full-time or core employees. NCR conceded that Mr. Tomlinson was a member of NCR's core workforce, but nevertheless contends that he was an at-will employee. Mr. Tomlinson argues that the "limited at-will statement" contained in Policy 422 is evidence to the contrary.

¶18 In *Cabaness*, an employee brought a wrongful termination claim against his employer, Bountiful City, alleging that an employee manual created an implied contract. 2010 UT 23, ¶¶ 15, 47. The language in the employee manual contained affirmative promises that certain policies would be followed in the event an employee complained of harassment. For example, the policy manual stated, "City policy *will not* tolerate verbal or physical conduct by any employee which harasses." *Id.* ¶ 59 (emphasis added). It also stated that harassment "shall not be tolerated by the City," harassment and violence was "strictly prohibited," and "[a]ny such form of reprisal will render the official or employee subject to disciplinary actions." *Id.* We held that the definitive statements in the employee manual were evidence of an implied-in-fact contract because they displayed the City's intent to voluntarily undertake additional duties beyond an employer's normal obligations to its employees. *Id.* ¶¶ 59–60.

¶19 The City relied on a disclaimer that stated, "No contract exists between [the City] and its employees *with respect to* salary, salary ranges, movement within salary ranges, or employee benefits." *Id.* ¶ 58 (emphasis added). We held that this statement did not absolve Bountiful City of all contractual liability because the express language limited the disclaimer to the specifically listed items related to salary. *Id.* Because there was an express restriction limiting the disclaimer to certain items, we inferred that Bountiful City "intended to create a contract with its employees with respect to the items in the Employee Manual that are not specifically listed in the disclaimer." *Id.*

¶20 The court of appeals incorrectly relied on *Cabaness* in holding that a negative inference can overcome the presumption of at-will employment. The court of appeals stated that the "limited at-will statement" contained in Policy 422 was comparable to the "limited" disclaimer contained in *Cabaness*. *Tomlinson*, 2013 UT App 26, ¶¶ 34–36. But in *Cabaness*, it was definitive language in Bountiful City's employment manual that created the implied-in-fact contract. 2010 UT 23, ¶ 59. While the "limited" disclaimer failed to disclaim liability created by these implied contract terms, it was not the "limited" disclaimer itself that gave rise to an implied-in-fact contract. *Id.* ¶ 58. In contrast, Policy 422 does not contain any definitive provisions creating an implied-in-fact contract. Instead, the policy contains a broad statement, "[e]mployment at NCR is AT WILL," when referencing the tactical workforce. The policy is simply silent as to the status of core workforce employees. And mere silence is not sufficient evidence to rebut the presumption of at-will employment. Accordingly, we hold that Policy 422 does not raise a factual dispute as to the existence of an implied-in-fact contract.

*B. Policy 210 Disclaimed Any Contractual Liability*

¶21 We next consider whether Policy 210 can be the basis of an implied-in-fact contract between NCR and its employees. The court of appeals held that Policy 210 contains definitive command language regarding termination procedures on which an employee could reasonably expect to rely. *Tomlinson*, 2013 UT App 26, ¶ 39. It further held that this definitive language created a mandatory policy to be followed for employees in need of performance improvement, and thus "a reasonable jury could find an implied contract limiting NCR's right to terminate Tomlinson at-will." *Id.* ¶ 45. The court of appeals also held that the disclaimer contained in Policy 210 was insufficient as a matter of law to prevent the formation of an implied-in-fact contract because the language "does not specifically state that employment at NCR is 'at-will,' nor does it define the voluntary nature of the employment relationship." *Id.* ¶ 44.

¶22 Mr. Tomlinson argues that NCR was required to comply with the internal procedures articulated in Policy 210 prior to terminating his employment. Policy 210 contains NCR's procedures for addressing both employee misconduct and deficient performance. It indicates that incidences of misconduct "may result in a range of responses from a written warning up to termination."

But it states that issues involving deficient performance will "result in a Performance Improvement Plan (PIP) with stated requirements for improvement." It then details a series of phases that managers are instructed to initiate "immediately" whenever an employee's performance falls below expectations.

¶23 Policy 210 also requires NCR managers to review an employee's performance to assess the performance gap, prepare a PIP with clear goals and a timetable for improvement, deliver the PIP to the employee with detailed instructions, and conduct routine follow-up sessions to assess the employee's progress. If an employee meets all of the performance goals, managers are instructed to "formally close out the 'PIP' with the employee." In the event that an employee fails to maintain satisfactory performance, managers are instructed to issue a "Final Warning" letter.

¶24 In addition to offering Policy 210, Mr. Tomlinson argues that the parties' course of conduct over the ten years in which he was employed at NCR corresponded to NCR's Manual. For example, Mr. Tomlinson asserts that he had successfully completed a PIP in June of 2004. Mr. Tomlinson also offers his 2004 annual performance review as evidence that NCR was following its own internal employee evaluation procedures.

¶25 Even if Mr. Tomlinson is correct that the terms of Policy 210 and NCR'a course of conduct may have created an implied-in-fact contract between NCR and its employees, Utah law allows employers to disclaim any contractual relationship that might otherwise arise from employee manuals. We have recognized that a "clear and conspicuous disclaimer, as a matter of law, prevents employee manuals or other like material from being considered as implied-in-fact contract terms." *Johnson*, 818 P.2d at 1003. "[W]hen an employee handbook contains a clear and conspicuous disclaimer of contractual liability, any other agreement terms must be construed in the light of the disclaimer." *Hodgson*, 844 P.2d at 334.

¶26 We will "interpret any conduct, oral statement, or written sentence asserted to be a term in a contract in a manner harmonious to the overall meaning of the contract," taking into account the disclaimer language. *Id.* The prominence of the text, the placement of the disclaimer, and the language of the disclaimer are all relevant factors in determining whether a disclaimer is clear and conspicuous. *Hamilton v. Parkdale Care Ctr., Inc.*, 904 P.2d 1110, 1112 (Utah Ct. App. 1995).

¶27   Policy 210 contains a disclaimer in bold text, set off by a text box, which states:

> *These guidelines are not intended to be contractual in nature,* nor should they be interpreted as strict rules for responses to individual activity.   The appropriate response to each unique situation may differ.   For example, some circumstances may call for immediate action, either in the way of written warning or termination, depending upon the frequency or severity of the offense.

(Emphasis added.)   NCR argues that this text is sufficient, as a matter of law, to disclaim any contractual requirement that NCR comply with the requirements of Policy 210.   We agree.

¶28 Mr. Tomlinson argues that Policy 210's disclaimer is insufficiently prominent to disclaim a contractual relationship.   We acknowledge that this case differs from our previous cases because NCR did not place its disclaimer at the beginning of the entire policy manual.  *See Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 401 (Utah 1998); *Johnson*, 818 P.2d at 999.   Instead, NCR's disclaimer is located at the top of Policy 210.   But we have never required that an employer place disclaimers in any particular location.   Rather, the focus of the analysis is on whether the placement of the disclaimer is sufficiently prominent to place a reasonable employee on notice that the employer was disclaiming any contractual relationship. Because the disclaimer at issue here is conspicuously located at the top of the relevant policy and is prominently bolded and set apart by a text box, we conclude that it was sufficiently prominent to put employees on notice of its terms.   Thus, the only remaining question is the extent to which the language in the disclaimer limited NCR's contractual liability.

¶29   Mr. Tomlinson argues that Policy 210's disclaimer fails to limit NCR's contractual liability because it lacked explicit at-will language.   Whether a disclaimer must contain explicit at-will language is a question of first impression for this court, but the federal district court for the District of Utah found that a disclaimer lacking specific at-will language was nevertheless sufficient as a matter of law to disclaim a contractual relationship. *Johnson v. City of Murray*, 909 F. Supp. 2d 1265, 1297 (D. Utah 2012).   In *Johnson*, the employee signed an employment application with the following disclaimer:

> I understand that this employment application and

any other City documents are not contracts of employment and that any oral or written statements to the contrary are hereby expressly disavowed and should not be relied upon by any prospective or existing employee.

*Id.* at 1273. The district court concluded that the "clear and conspicuous" disclaimer did not "evince an intent by the [employer] to create a contract with its employees." *Id.* at 1297.

¶30 The disclaimer language of Policy 210 is similar to the disclaimer language in *Johnson*. Both disclaimers convey an express intent that the provisions of the company employment policies do not give rise to an enforceable contract. The language of a disclaimer need not employ the magic words "at-will" if it otherwise clearly conveys the employer's intention not to enter into a contract or to create mandatory procedures for employment terminations. And NCR's disclaimer clearly conveyed such an intent. Without evidence that NCR intended to create a contract, a reasonable jury could not have determined that NCR agreed to limit its ability to terminate its employees. In short, given the clear and unambiguous language of the disclaimer, no reasonable jury could conclude that NCR intended Policy 210 to give rise to an implied contract.

¶31 We hold that NCR's policy manual did not create an implied-in-fact contract limiting NCR's ability to terminate Mr. Tomlinson at will. The court of appeals erred in concluding that the lack of express at-will language in Policy 422 gave rise to an implied-in-fact contract. And Policy 210's disclaimer was sufficient as a matter of law to disclaim any contractual liability arising from NCR's failure to follow the procedures contained therein. We accordingly reverse the court of appeals and affirm summary judgment in favor of NCR.

## II. MR. TOMLINSON FAILED TO ESTABLISH A BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

¶32 "An implied covenant of good faith and fair dealing inheres in every contract." *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193. But we have consistently rejected the notion of a free-standing implied covenant of good faith and fair dealing in the absence of a contract. *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991). And the implied covenant cannot "establish new, independent rights or duties not agreed upon by the parties." *Id.* Because we conclude that Mr. Tomlinson failed to establish the

11

existence of an implied contract, he cannot establish a violation of the covenant of good faith and fair dealing. We accordingly reverse the court of appeals and affirm summary judgment on this claim as well.

## CONCLUSION

¶33   The court of appeals erred in holding that NCR's Corporate Management Policy Manual could be read to create an implied contract rebutting the presumption that Mr. Tomlinson was an at-will employee.   Summary judgment in favor of NCR was appropriate on Mr. Tomlinson's claim of an implied contract and on the related claim for breach of the implied covenant of good faith and fair dealing.