**2019 UT App 19**

## THE UTAH COURT OF APPEALS

BRETT WAYMENT,
Appellee,
*v.*
SCHNEIDER AUTOMOTIVE GROUP LLC
AND NATE WADE SUBARU,
Appellants.

Opinion
No. 20161090-CA
Filed January 31, 2019

Third District Court, Salt Lake Department
The Honorable Paige Petersen
No. 150905943

Mark O. Morris, Attorney for Appellants

David M. Wahlquist, Adam D. Wahlquist, and Justin
W. Starr, Attorneys for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1 Schneider Automotive Group LLC and Nate Wade Subaru (collectively, Nate Wade) helped sponsor a charity golf tournament. When Brett Wayment made a hole in one at the eighth hole in that tournament, he believed he had won the new car that Nate Wade parked near the hole's tee box. Nate Wade, however, refused to deliver the car, claiming Wayment was ineligible because he was a professional golfer. Wayment sued for breach of contract. After the parties conducted discovery, Wayment moved for summary judgment on his contract claim, which the district court granted. Nate Wade now appeals that decision, contending that there are material questions of fact that precluded summary judgment. We agree and reverse.

BACKGROUND[1]

*The Tournament*

¶2 In June 2015, Wayment, a professional golfer, played in a charity golf tournament sponsored, in part, by Nate Wade. Rule sheets, which described the tournament format and identified a hole-in-one contest at the eighth hole, were placed on the participants' golf carts. *See infra* Appendix. When golfers arrived at the eighth hole, they saw a new 2015 Subaru XV Crosstrek parked next to the tee box along with a sponsorship sign with Nate Wade's name and logo. *See id.* Neither the rule sheet nor the sign stated that the Subaru, or any other prize, would be awarded. *See id.*

¶3 As luck, or Wayment's skill, would have it, Wayment made a hole in one at the eighth hole. After holing the shot, Wayment believed he won the Subaru based on the tournament rule sheet indicating the contest on the eighth hole, Nate Wade's sponsorship of the hole, and the parked car. At the clubhouse, however, the club pro told Wayment, "Good luck getting that car, Brett," because he knew Wayment was a professional golfer. Several days after the tournament, when Nate Wade discovered that Wayment was a professional golfer, it refused to deliver the car. The tournament organizer did not expect professional golfers to compete for tournament prizes without disclosing their professional status, which Wayment never did. And although that condition was never communicated to the tournament participants, the insurance policy that Nate Wade

---

1. Because this is an appeal from a summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (quotation simplified).

procured for the tournament required that the hole in one be made by an amateur.[2]

*The Litigation*

¶4    Wayment sued Nate Wade for breach of contract. He claimed that he had accepted Nate Wade's unilateral offer to give him the car when he made the hole in one, while Nate Wade maintained that professional golfers were excluded from the contest.

¶5    Because there was no written agreement detailing what was promised, each side obtained opinions from professional golfers about whether it was reasonable for Wayment to believe he was eligible to win the Subaru under the circumstances. Wayment and another professional golfer (Wayment's Expert) both opined that nothing in the custom or rules of the golf community bars professionals from winning prizes in charity golf events. However, the club pro from the tournament (Nate Wade's Expert) disagreed. He expressed his opinion that, as a matter of custom, professional golfers should disclose their professional status before playing in golf events with amateurs. He also opined that it is generally understood in the golf community that professional golfers are not eligible for competition prizes unless the competition rules explicitly say otherwise.

¶6    At his deposition, Nate Wade's Expert agreed there was no "uniformity amongst all pros in the golf community"

---

2. The insurance policy contained other conditions, such as requiring the hole in one be made from the correct yardage on the day of the tournament and be witnessed by another person. Nate Wade does not argue that these requirements were not met.

regarding a professional's eligibility for competition prizes in charity golf tournaments. He explained that his opinion on the ineligibility of professional golfers in prize contests was a "personal feeling" and asserted that other professionals might reasonably think differently. And when asked specifically whether it was reasonable for Wayment to believe he was eligible to participate in the prize competition in question, Nate Wade's Expert responded, "Yes, I believe it would be reasonable under some circumstances."[3]

¶7 Another golf professional similarly opined that although he thought that professional golfers are generally excluded from competition prizes in charity golf events, this opinion was his "personal understanding— not an understanding, standard or custom necessarily adopted by the Utah professional golf community at large." He added that there are "no written rules" on the customs or standards of professionals' eligibility for tournament prizes and said, "I am aware that there are some golfers that believe as I do. There are also other golfers that believe

---

3. Nate Wade's Expert originally responded, "Yes, I believe it would be reasonable," without the qualification. He later clarified this response, under rule 30(e) of the Utah Rules of Civil Procedure, by adding, "Yes, I believe it would be reasonable *under some circumstances*." (Emphasis added.) Wayment objected to this clarification, arguing that the district court should strike it because, although timely under rule 30(e), it was made after Wayment had filed his motion for summary judgment. The district court declined to resolve this objection because "the clarification did not alter [its] decision." Specifically, the court concluded that the addition of "under some circumstances" was still a "definitive answer" because Nate Wade's Expert "knew the circumstances of this situation."

differently. There is currently no uniformity of opinion on these issues."[4]

*The Judgment*

¶8    Relying on the opinions expressed by both parties' experts, Wayment moved for summary judgment on his breach of contract claim, which the district court granted. The court determined it was undisputed that Nate Wade sponsored a hole-in-one contest at the golf tournament, and that by sponsoring that contest, Nate Wade agreed to reward a participant who hit the ball into the eighth hole with one stroke "based on whatever terms a reasonable contestant could understand." The court then identified the relevant questions as (1) whether Nate Wade manifested an intent to reward a hole in one with the Subaru and (2) whether it was reasonable for Wayment to believe that he, as a professional, was eligible to win the prize.

¶9    Based on the rule sheet, the sign on the eighth hole identifying Nate Wade as the hole's sponsor, and the new Subaru parked next to the eighth-hole tee box, the court concluded it was "reasonable for participants to think that they could win a car by making a hole-in-one . . . if they were an amateur." The court then concluded that because Nate Wade did not manifest its subjective intent to limit the contest to amateur golfers, it was reasonable for Wayment, as a professional golfer, to believe he was eligible to win the Subaru. In reaching this conclusion, the court reasoned that there was no dispute

---

4. After first signing a declaration for Nate Wade, this individual signed a subsequent declaration for Wayment, expressing the opinion above but stating that he had "no desire to participate in th[e] case or to serve as an expert" and that he would "decline any such invitation" to serve as an expert in this case. Neither party moved to strike either one of his declarations.

between the parties' experts. Specifically, the court concluded that the statement of Nate Wade's Expert that "it would be reasonable under some circumstances" for Wayment to believe he was eligible for the prize contest was a "definitive answer" because he knew the circumstances of the situation.

¶10    Discerning no material factual dispute, the district court concluded summary judgment was appropriate and granted Wayment's motion. Nate Wade appeals.


ISSUE AND STANDARD OF REVIEW

¶11    Nate Wade contends that the district court improperly granted summary judgment in favor of Wayment on his claim for breach of contract. Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "We review the district court's summary judgment ruling for correctness and view all facts and reasonable inferences in favor of the nonmoving party." *USA Power, LLC v. PacifiCorp*, 2010 UT 31, ¶ 28, 235 P.3d 749 (quotation simplified). And even where "the objective facts are undisputed," the "reasonable inferences made from those undisputed facts can . . . create a genuine issue of material fact" precluding summary judgment. *Id.* ¶ 33. A contrary rule, our supreme court has noted, "would diminish the important role reasonable inferences play" in a summary judgment decision. *Id.*


ANALYSIS

¶12    Nate Wade argues that the district court erred in concluding, as a matter of law, that when Wayment made a hole in one on the eighth hole of the charity golf tournament, he accepted a binding offer from Nate Wade to award him a new Subaru. More specifically, Nate Wade argues that summary

judgment was inappropriate because "not one golfer was told, orally or in writing, that they would win a car by hitting a hole-in-one." It argues that the burden is "on Wayment to demonstrate . . . a sufficiently clear manifestation of intent to offer the [Subaru] to everyone, including professional golfers." Without any writing or statement about the hole-in-one contest's conditions, Nate Wade asserts that "there was no such offer or, at the very least, there is a fact question that precluded summary judgment."

¶13 Before addressing Nate Wade's arguments about the propriety of summary judgment, we find it helpful to label the type of contract in play here. Both parties agree that, to the extent a contract exists between Nate Wade and Wayment, it is a unilateral contract. A unilateral contract "is where one party makes a promissory offer and the other accepts by performing an act rather than by making a return promise." *Z-Corp v. Ancestry.com Inc.*, 2016 UT App 192, ¶ 5 n.3, 382 P.3d 652 (quotation simplified). This is the case in "prize-winning contests . . . where an offer or promise is made in exchange for an act to be performed on the part of the contestant." *Walters v. National Beverages, Inc.*, 422 P.2d 524, 525 (Utah 1967). Accordingly, "the performance of th[e] act is an acceptance of the offer and results in a binding contract." *Id.*; *see also Mallory v. Brigham Young Univ.*, 2014 UT 27, ¶ 23 n.11, 332 P.3d 922 (explaining that a "meeting of the minds" occurs and a "unilateral contract is established if and when the offeree begins substantial performance" (quotation simplified)).

¶14 We also think it plain that the contract here would be implied in fact, not express. An express contract, as its name suggests, is "expressed in words." *Gleason v. Salt Lake City*, 74 P.2d 1225, 1227 (Utah 1937). By contrast, an implied-in-fact contract is "established by conduct." *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 44, 355 P.3d 1000; *Outsource Receivables Mgmt., Inc. v. Bishop*, 2015 UT App 41, ¶ 6, 344 P.3d

1167; *see also* Restatement (Second) of Contracts § 19 cmt. a (Am. Law Inst. 1981) ("Conduct may often convey as clearly as words a promise or an assent to a proposed promise.").

¶15    The existence of an express contract is "ordinarily a question of law." *E.g.*, *Cea v. Hoffman*, 2012 UT App 101, ¶ 9, 276 P.3d 1178. "When the existence of a contract and the identity of its parties are not in issue and when the contract provisions are clear and complete, the meaning of the contract can appropriately be resolved by the court on summary judgment." *iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 36, 424 P.3d 970 (quotation simplified).

¶16    The existence of an implied-in-fact contract, however, "is a question of fact which turns on the objective manifestations of the parties' intent and is primarily a jury question." *Tomlinson v. NCR Corp.*, 2014 UT 55, ¶ 12, 345 P.3d 523 (quotation simplified). A court may properly determine the existence of an implied-in-fact contract as a matter of law if the evidence of the contract is not in dispute and admits of only one inference. *See id.*; *see also Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 306 (Utah 1992) ("If a reasonable jury cannot find that an implied contract exists, summary judgment is appropriate."). But a jury question is presented when the existence of an implied-in-fact contract is in dispute and reasonable minds could differ regarding the meaning of the parties' objective manifestations. *See Judge v. Saltz Plastic Surgery, PC*, 2016 UT 7, ¶ 19, 367 P.3d 1006 ("In cases where reasonable minds could differ . . . summary judgment is not an option. If the court . . . concludes that reasonable minds could differ . . . , then the issue is a jury question." (quotation simplified)); *see also, e.g.*, *Francisconi v. Union Pac. R.R.*, 2001 UT App 350, ¶¶ 14–15, 36 P.3d 999 (holding that, because a reasonable jury could find an implied-in-fact contract, summary judgment was inappropriate); *Wood v. Utah Farm Bureau Ins. Co.*, 2001 UT App 35, ¶ 18, 19 P.3d 392 (same).

¶17 Here, a reasonable jury *could* find an implied-in-fact contract between Nate Wade and Wayment, but would by no means be obligated to find such a contract. Thus, "the issue should not have been taken from the jury." *See Sachs v. Lesser*, 2007 UT App 169, ¶ 25, 163 P.3d 662 (quotation simplified), *rev'd on other grounds*, 2008 UT 87, 207 P.3d 1215. The undisputed facts of this case include Nate Wade's sponsorship sign on the eighth hole, the parked Subaru, and the tournament rule sheet indicating the hole-in-one contest. But none of those expressly promised the Subaru to Wayment; we are instead left with inferences to be drawn from the parties' conduct. And what the sign, car, and rule sheet mean—even though their factual character is undisputed—is for the jury to decide. *See USA Power, LLC v. PacifiCorp*, 2010 UT 31, ¶ 33, 235 P.3d 749.

¶18 Letting a jury determine what was communicated by the parties' objective manifestations is especially important here because, as both parties agree, "[t]here is no uniformity of opinion among professional golfers as to whether they are eligible for prizes in tournaments that are intended for amateurs." Nate Wade's Expert testified that he personally would not feel eligible to win a prize in a charity golf tournament without checking with the tournament organizers first. He added, however, that "it would be reasonable under some circumstances" for Wayment to believe he was eligible for the Subaru. The district court determined that this was a "definitive answer," but that determination does not by itself make summary judgment appropriate in this context. With no uniform standard, it is for a jury to decide what was reasonable for Wayment to believe.[5]

---

5. The golf professional relied on by both parties similarly stated that there is no uniformity of opinion in the golf community on this issue and that some golfers believe that professionals are

(continued…)

¶19    This does not mean that Wayment's subjective belief alone is sufficient to create an enforceable contract. Nate Wade suggests that the district court rested its summary judgment decision on nothing more than Wayment's subjective belief that he was entitled to a car. Although we conclude that the court's decision was in error, we reject Nate Wade's characterization of that decision. The court erred in treating as dispositive the agreement of the experts that it may have been reasonable for Wayment to compete as a professional. But the court did not, as Nate Wade contends, base its decision solely on what it determined was Wayment's subjective belief.

¶20    In urging us to affirm, Wayment contends that summary judgment was warranted because the facts are undisputed and lead to only one reasonable conclusion. Specifically, he argues that it is undisputed that Nate Wade intended to offer the Subaru to amateurs and that the limitation excluding professionals from the hole-in-one contest was never communicated to the players. He therefore seeks to bind Nate Wade to its intention of offering the Subaru but to ignore Nate Wade's intention to limit the offer to amateurs. This reasoning might be correct if there were an express contract. *See Jaramillo v. Farmers Ins. Group*, 669 P.2d 1231, 1233 (Utah 1983) ("It is well established in the law that unexpressed intentions do not affect the validity of a[n express] contract."). But the difficulty in this case is that there was no express promise. There is a sponsorship sign, a parked car, and a rule sheet. There is also testimony that, while not necessarily unreasonable to believe otherwise, some professional golfers do not consider themselves eligible for prizes unless explicitly told they are eligible. Thus, the fact that

---

(…continued)

ineligible and other golfers disagree. The fact that both parties leaned on his opinion highlights that reasonable minds can differ on whether Nate Wade extended an offer to Wayment.

no one disputes the presence of the sign, car, or rule sheet during the tournament is not enough to take the question from the jury and deem a contract established as a matter of law. *See USA Power*, 2010 UT 31, ¶¶ 32–33.[6]

¶21 In sum, the existence of an implied-in-fact contract depends on objective manifestations—conduct—and is typically a jury question. Where reasonable minds could differ on the meaning of the parties' objective manifestations, summary judgment is not an option. We hold that this is such a case. The lack of a uniform standard demonstrates that, as is usually the

---

6. Wayment also places some reliance on three out-of-state cases involving hole-in-one contests that held that uncommunicated conditions did not limit the expressed offers made. *Grove v. Charbonneau Buick-Pontiac, Inc.*, 240 N.W.2d 853 (N.D. 1976); *Cobaugh v. Klick-Lewis, Inc.*, 561 A.2d 1248 (Pa. Super. Ct. 1989); *Harms v. Northland Ford Dealers*, 1999 SD 143, 602 N.W.2d 58. In addition to being nonbinding, we also conclude that these cases are distinguishable. All three concerned *express* promises from the sponsor of the tournaments that whoever made a hole in one was entitled to a prize. *Grove*, 240 N.W.2d at 855; *Cobaugh*, 561 A.2d at 1249; *Harms*, 1999 SD 143, ¶ 4. Here, we have a potential implied-in-fact contract that must be determined by inferring intent from Nate Wade's objective manifestations. Moreover, *Grove* relied on a statute directing courts to construe ambiguous *language* against the party who created the ambiguity—that is, the drafters of that language—and *Harms* in turn relied on *Grove*. *Grove*, 240 N.W.2d at 858, 862; *Harms*, 1999 SD 143, ¶¶ 14–15. Wayment does not direct us to, and we are not aware of, any authority that would require us to construe *manifestations* of intent against an actor. Although the intent behind Nate Wade's objective manifestations may not be immediately apparent, it is not a contractual ambiguity in the usual sense. It simply presents a jury question.

case for implied-in-fact contracts, this is a jury question. Nate Wade's Expert's testimony that it was, at least potentially, reasonable for Wayment to believe he was eligible for the contest prize did not remove all debate on the issue and establish a contract as a matter of law. A reasonable jury could conclude that, based on Nate Wade's objective manifestations, Nate Wade intended to exclude professional golfers from winning the Subaru. Or it could conclude otherwise. Because both options are possible, it was inappropriate to grant summary judgment in this instance.

CONCLUSION

¶22    We reverse the district court's order granting summary judgment to Wayment and remand for further proceedings consistent with this opinion.

—————

APPENDIX

The tournament rule sheet:



### 2015 Big League Dreams Foundation Golf Tournament

Men tee off from Blue Tees. Women from Silver Tees.

Format is a 4 person Scramble. All players tee off from respective tee box. Choose the best drive and all players play next shot from there (within a club length, no closer to the hole and no improved lie). Procedure is followed on each shot for the remainder of the hole. With putts, the first ball to go in the hole is counted for the team score. Do not 'tap in' before all players have taken their shot.

Valley Course #1 - Longest Drive contest (Men & Women). Must be in the fairway to count.
Valley Course #8 - Hole In One
Lakes Course #4 - Longest Putt (Men & Women)
Lakes Course #7 - Closest to the Pin (Men & Women
Lake Course #6 - All players must tee off with the baseball bat on the baseball tee. Scramble rules the rest of the way.

The sponsorship sign on the eighth hole:

